*James B. Conyers*, for plaintiff in error.
*Samuel P. Maddox*, solicitor-general, contra.

---

## McDUFFIE *v.* THE STATE.

1. A de facto marshal of a municipal corporation is authorized to make an arrest.
2. In view of the evidence, there was no error in refusing to charge the jury that the deceased had no right to arrest the defendant.
3. Had the arrest been lawful and conducted in a lawful manner, the admitted killing would have been murder.
4. The verdict of manslaughter necessarily implies that the jury found that the arrest was either originally unlawful, or that the officer put himself beyond the cover and protection of his authority by the use of undue violence, but that such violence was not sufficient to arouse the fears of a reasonable man so as to make the killing justifiable.
5. An officer may lawfully arrest his bitterest enemy, or he may unlawfully arrest his best friend.   The legality of the arrest, the right of the defendant to resist the use of excessive force in making it effectual, and the extent of his right to resist if it was originally unlawful, were entirely independent of the motive actuating the marshal.
6. The evidence as to the threats by the deceased to make an arrest, and of threats by the defendant to kill in resisting arrest, warranted the charge of the judge and fully sustained his statement as to the contentions of the parties.

7. While the defendant could show that the State's witness had unkindly feelings toward him, it was not competent to go into details of the difficulty between the witness and the defendant.

8. The fact that a witness may have been in a lewd house was irrelevant to any issue on trial, and it was not error for the court to refuse to compel him to answer the inquiry as to why he was there.

9. The refusal to permit a witness to testify that, five days after the homicide, he saw bruises and contusions on the defendant's head was not harmful, other undisputed evidence as to the bruises upon the head of the defendant immediately after the killing having been submitted by other witnesses.

10. The marshal's stick was before the jury, who could determine as well as a non-expert whether it was a weapon likely to produce death. 120 *Ga.* 846.

11. There was not enough to connect the absence of the knobs on the stick with the violent use thereof at the time of the killing to warrant a reversal because of a failure to allow evidence that the knobs were on the stick a considerable time before the homicide, and absent therefrom some time after the killing.

12. The only evidence as to flight was offered by the defendant with his explanation thereof. It was not, under the circumstances detailed in the record, error to exclude evidence of a voluntary surrender, offered by a witness for the defendant before the conclusion of the State's case, in rebuttal of a theory not then advanced.

13. The introductory remark of the court as to the importance of the case because involving a matter of death or imprisonment could not have harmed the defendant. The contention that it excluded the idea of acquittal is not sustained by the record, it appearing that in immediate connection therewith the judge impressed upon the jury the fact that they were as much under obligation to acquit an innocent man as to convict one who was guilty.

14. The assignments relating to the instructions of the judge on the subject of murder are immaterial, the jury not having found the defendant guilty of murder but of manslaughter.

15. The charge as to manslaughter was correct; and if the defendant desired more specific instructions on that subject, appropriate requests therefor should have been submitted in writing.

16. So far as the requests to charge were proper, they were included in the general instructions given by the court.

17. The newly discovered evidence was either cumulative or impeaching in its nature.

18. The evidence was conflicting, but sufficient to sustain the verdict. No error of law requiring the grant of a new trial appears.

Submitted December 19, 1904. — Decided January 26, 1905.

Conviction of manslaughter. Before Judge Parker. Wilcox superior court. October 22, 1904.

Ashley McDuffie was charged with the murder of John Blue, and found guilty of voluntary manslaughter. He made a motion for a new trial, which was overruled, and he excepted. While

the killing was admitted, the evidence was sharply conflicting as to the circumstances attending the homicide. For the State there was evidence tending to show that Blue was marshal of Pineview; that, hearing firing of pistols in the corporate limits, he went towards the place where the shots were fired, and met McDuffie returning from that locality. A witness for the State testified that McDuffie fired the shot. This was denied by defendant and another witness. When the marshal met McDuffie a conversation took place between them as to whether McDuffie had fired the weapon, during which time it is claimed that McDuffie became boisterous and cursed, and, when threatened with arrest, stated that he would not submit. Blue put his hand upon him, telling him to consider himself under arrest. Immediately thereafter blows passed, though who struck first did not appear from the evidence for the State. That for the defense was to the effect that Blue struck the first blow with his club. There was some evidence as to a blow on Blue's head and of blows and contusions on the head of McDuffie. In the altercation McDuffie fired, killing Blue. There was also evidence, that in talking to a person who had been arrested by Blue, McDuffie said the latter could not arrest him; and that he had procured a pistol on the day of the homicide, stating that he was going to kill a man with it if he tried to arrest him that night; and that on another occasion he stated that if Blue ever attempted to arrest him he was going to kill him. For the defense this was denied. There was testimony of statements by Blue that he wanted an opportunity to arrest McDuffie, and that he would lock him up or do as Barfield had done Miller. This was supplemented by testimony as to a difficulty between Barfield and Miller. The defense attempted to go into the particulars of this trouble, showing the bad feeling between a State's witness and McDuffie. The witness admitted that his feelings had been bitter, but testified that they were not so at the time of the examination. The court refused to allow the particulars of the trouble to be inquired into. The defendant excepts to this ruling, and also to the refusal of the court to allow counsel to ask a witness for the State why he was in a certain house; the witness objecting to make answer, and it appearing from the brief here that it was intended to be shown that it was a lewd house.

*M. E. Land, D. B. Nicholson, W. L. & Warren Grice, Fort & Grice,* and *Arnold & Arnold,* for plaintiff in error.

*John F. DeLacy, solicitor-general,* and *Hal Lawson,* contra.

LAMAR, J. (After stating the foregoing facts.)　1: The Penal Code (§§ 885, 332) recognizes marshals as peace officers. Under the principle embodied in the Political Code, § 223, and the Civil Code, § 5168, it was held in *Robinson* v. *State,* 82 *Ga.* 535, and in *Garrett* v. *State,* 89 *Ga.* 446, that a de facto marshal stands upon the same footing, as to the right to make an arrest, as one regularly appointed. In the present case, while his commission was not produced, it appeared from all the evidence that Blue was marshal — was accustomed to make arrests, and that such fact was well known to McDuffie.

2. The defendant strenuously insists, that, as there was no proof of the existence or terms of any ordinance prohibiting disorderly conduct, the court should have charged that there was no evidence that Blue had a right to make the arrest. There was evidence of disorderly conduct. Without proof of an ordinance, it was said in *Burns* v. *State,* 80 *Ga.* 546, that a policeman had a right to arrest one in Savannah who was disorderly, and was justified in using such force as was necessary to compel submission. But, irrespective of the question of disorderly conduct, there was no error in refusing to instruct the jury as requested. There was at least some evidence that McDuffie was carrying a concealed weapon. Watts, one of the witnesses for the defendant, testified, that "Blue told McDuffie there had been some shooting, and he believed McDuffie had done it, and he would have to arrest him. He took out his pistol and showed him five cankered cartridges in it." The defendant in his statement also claimed to have "pulled out his pistol and showed it to Blue." There was evidence from other bystanders that they had not seen a pistol. While the issue was not distinctly presented, there was enough evidence of carrying a concealed weapon to warrant a refusal to charge that there was no proof to show that Blue had the right to arrest.

3. If the arrest had been lawful, and conducted in a lawful manner, the resistance culminating in homicide would have amounted to murder.

4. Had the jury found McDuffie guilty of murder, any error of omission or commission on the subject of the law of arrest

would have been more important than it can possibly be under the present record.   Here he was found guilty of manslaughter. This necessarily implies that the jury found either that the arrest was originally unlawful, or that it was being made in an unlawful manner so as to put Blue beyond the cover and protection which the law affords a peace officer when properly in the discharge of his duty.   An examination of the entire charge, however, shows that the judge fully and fairly presented all the issues raised by the evidence.   He instructed the jury as to the rights of an officer making a lawful arrest and the extent of a citizen's right to resist an unlawful arrest, and also fully and fairly instructed them as to the right of McDuffie to resist force with force in case he was being unlawfully arrested, or lawfully arrested and unlawfully beaten.

5. There was evidence of bad blood between the two men, but that did not in any way affect the rights of either.   A marshal may lawfully arrest his worst enemy, or may unlawfully arrest his best friend.   The motive would not determine the legality of the act.   Whether it was originally a lawful arrest properly conducted, or lawful with improper force justifying resistance by commensurate force, or assault and battery, would be determined without regard to the motive with which the arrest was begun or attempted to be made effectual.   There was no error, therefore, in refusing to charge as requested on the subject of the motive with which Blue made the arrest.   If the arrest was lawful, it did not become the less so because of any ill will towards McDuffie.

7. It was competent to show that a witness for the State entertained feelings of ill will towards the defendant.   Civil Code, § 5289.   But that did not warrant an investigation of the particulars of the difficulty, or the cause of the hostility.   To admit such testimony would multiply issues and tend to confuse the jury. *Andrews* v. *State*, 118 *Ga.* 4; *Bishop* v. *State*, 9 *Ga.* 121 (1).  Had the witness replied that he had no ill will, it would have been proper, on further cross-examination, to ask if he and the defendant had not had a fight.   Had he denied that, the accused would have been entitled to prove the contrary.   *Daniel* v. *State*, 103 *Ga.* 206.   But this would not justify an investigation of a mere collateral issue or of the particulars of the difficulty.

Before the evidence for the State was concluded, the defendant

was allowed to introduce a witness out of the regular order. The court refused to allow him to testify as to a voluntary surrender by the defendant. There are cases which hold that such evidence is inadmissible, because in the nature of self-serving declarations. People v. Cleveland, 107 Mich. 367, 65 N. W. 216. That question is not presented, the assignment being that the evidence was in rebuttal and explanation of the flight already proved by the State. The only evidence on the subject of flight which we find is that subsequently offered by the defendant himself, and at the time there was nothing to warrant its admission in rebuttal or for the purpose for which it was offered.

The other grounds of the motion for a new trial are sufficiently dealt with in the headnotes. We find no error requiring the grant of a new trial.

*Judgment affirmed. All the Justices concur.*