## A91A0247. THOMAS v. THE STATE.
## A91A0248. ARMOUR v. THE STATE.
(405 SE2d 512)

ANDREWS, Judge.

Thomas and Armour were jointly tried by a jury on charges of armed robbery, possession of a firearm during the commission of a crime, and theft by receiving stolen property. Thomas was found guilty on all three charges, and Armour was convicted only on the theft charge. They appeal from the judgments and sentences entered on the convictions.

The victim was robbed of her car at gunpoint by two men as she left the post office. Nine days after the robbery Armour was arrested driving the victim's stolen car with Thomas as a passenger. A DeKalb County police officer on routine patrol noticed that the passenger in the car ahead of her kept suspiciously turning back to look at her. After a computer check revealed that the car was reported stolen, the officer followed the car to an apartment complex, where she observed the driver back the car into a parking space. She then positioned her patrol car in front of the car and called for backup. For the next three to four minutes Armour and Thomas sat in the car looking at the officer, who remained in her patrol car. Then both appellants exited the car and began to walk off in opposite directions. At that point the officer arrested both men. The victim later positively identified Thomas as one of the robbers. She could not positively identify Armour, though she stated she was 35 percent sure that Armour was the other robber.

### Case No. A91A0247

1. In his second and third enumerations of error Thomas claims he cannot be found guilty of both armed robbery of the car and theft by receiving the stolen car, for which he received consecutive sentences of 20 and 10 years. We agree. "The offense of theft by receiving is intended to catch the person who buys or receives stolen goods, as distinct from the principal thief." *Sosbee v. State*, 155 Ga. App. 196, 197 (270 SE2d 367) (1980). An essential element of the crime of theft by receiving is, "that the goods had been stolen by some person other than the accused. . . ." *Austin v. State*, 89 Ga. App. 866, 868 (81 SE2d 508) (1954).

There was evidence sufficient to support Thomas' conviction on either of the charges. Though positively identified by the victim,

Thomas denied that he was the armed robber. Even if the jury believed Thomas about the robbery, the evidence showed he was arrested in the stolen car nine days later along with Armour under circumstances which would have justified the jury to convict him of theft by receiving the stolen vehicle. Although the rule against inconsistent verdicts in criminal cases has been abolished (*Milam v. State*, 255 Ga. 560, 562 (341 SE2d 216) (1986)), the verdicts here are not merely inconsistent, but are mutually exclusive. "The general rule dispensing with the necessity for consistency as between the acquittals and guilty verdicts under a multicount indictment or information is not ordinarily applied where the jury returns multiple convictions as to crimes which are mutually exclusive of each other." 18 ALR3d 259, 283.

The state argues that the problem created by these repugnant verdicts can be cured if we set aside the theft by receiving conviction and sentence, and allow Thomas' armed robbery and possession of a firearm convictions to stand. Though mindful of the decision in *Milanovich v. United States*, 365 U. S. 551, 555-556 (81 SC 728, 5 LE2d 773) (1961), which reversed mutually exclusive convictions and ordered a new trial, we are not bound by that decision because it interprets the applicable federal criminal statutes rather than the Georgia statutes at issue here, and involves no generally applicable constitutional principles. *Hepner v. Southern R. Co.*, 182 Ga. App. 346, 350 (356 SE2d 30) (1987). We are persuaded by the reasoning of Justice White in his concurring opinion in *United States v. Gaddis*, 424 U. S. 544, 550 (96 SC 1023, 47 LE2d 222) (1976). "[A] jury, having convicted on the robbery count, should stop there without going on to consider the [theft by receiving] count. If the jury is erroneously permitted, however, to consider and convict on the [theft by receiving] count as well, such a conviction casts absolutely no doubt on the validity of the robbery conviction. Under such circumstances it is not impossible to say upon which count, if either, a properly instructed jury would have convicted the defendant. It may be concluded with satisfactory certainty that the jury, having convicted for both offenses, would have convicted of robbery if it had been properly instructed. The verdict on the robbery shows that the jury found each element of that offense to have been established beyond a reasonable doubt. That the jury went on to find that the defendant also [received] the proceeds of the robbery — whether on a different date and on different proof or not — casts no doubt on the trustworthiness of the findings on the robbery count . . . for those findings [on the theft by receiving count] are factually consistent with the findings on the robbery count. In all cases in which the court correctly instructs the jury on the elements of the crime of robbery, any resulting conviction and sentence should be sustained. In those cases in which the

jury also convicts of [theft by receiving], that conviction and any sentence on it should simply be vacated. A new trial on the robbery count in any such case would result in an expenditure of court resources and the possibility of an acquittal — through loss of evidence or other causes — of a reliably convicted defendant for no reason." Id. at 551-553 (White, J., concurring).

Accordingly, Thomas' conviction and sentence for theft by receiving is vacated. His convictions and sentences for armed robbery and possession of a firearm in the commission of a crime are affirmed.

2. In enumerations of error four and five, Thomas claims that his character was improperly placed into issue when the state introduced evidence of counterfeit drugs and a marijuana cigarette found in the victim's car after it was recovered from the appellants. Because no objections to introduction of this evidence were made at trial, we will not consider these claims on appeal. *Mundy v. State*, 259 Ga. 634, 635 (385 SE2d 666) (1989).

3. We need not address Thomas' enumeration of error one which claims that the trial court erred by failing to grant appellant's motion for a new trial. This enumeration is not supported in the brief by citation of authority or argument, and is deemed abandoned. Rule 15 (c) (2); *Boyce v. State*, 184 Ga. App. 578, 580 (362 SE2d 229) (1987). Even if appellant's brief arguably raises the claimed error, appellant's failure to make reference to specific portions of the transcript where the error occurred, results in a waiver of this issue. Rule 15 (c) (3); *Palmer v. State*, 186 Ga. App. 892, 894 (369 SE2d 38) (1988).

4. In his sixth enumeration of error, Thomas claims his trial counsel was ineffective in failing to object to the introduction of evidence allegedly placing his character into issue. Thomas' appellate counsel did not participate in the trial or the motion for new trial, and now raises the issue of ineffectiveness for the first time on appeal. We remand this case for an evidentiary hearing on the claim of ineffectiveness of trial counsel. If the trial court determines that the defendant was denied effective assistance of counsel, he is entitled to a new trial. If the court finds counsel was not ineffective, then Thomas may appeal that order within 30 days. *Johnson v. State*, 259 Ga. 428, 429-430 (383 SE2d 115) (1989); *French v. State*, 198 Ga. App. 210 (401 SE2d 67) (1990); *Frazier v. State*, 195 Ga. App. 599, 600-601 (394 SE2d 396) (1990).

### Case No. A91A0248

5. In his first enumeration of error Armour asserts that the trial court erred by denying his motion to sever his trial from that of his co-defendant, Thomas. In his second related enumeration, he claims that the failure to sever caused reversible error when pursuant to

OCGA § 24-9-20 the trial court limited his cross-examination of Thomas by refusing to allow him to impeach Thomas with a prior felony conviction for robbery. At trial Thomas elected to take the stand in his own behalf, and gave testimony contrary to a pre-trial statement he had voluntarily given to police implicating Armour. In its cross-examination, the state used the statement to impeach Thomas, thereby introducing the statement by Thomas which was antagonistic to Armour's defense.[1] Though Thomas was thereafter subject to cross-examination by Armour,[2] the trial court refused to allow Armour to use the prior robbery conviction to impeach Thomas because, as a defendant who had not placed his character in issue, no evidence of general bad character or prior convictions were admissible against him. OCGA § 24-9-20; *Williams v. State*, 257 Ga. 761, 762 (363 SE2d 535) (1988). Nor was there any claim that the prior conviction was otherwise admissible to show a common design, purpose or some other rational connection with an offense at issue. See *Jones v. State*, 257 Ga. 753, 757-758 (363 SE2d 529) (1988).

The issue is whether the trial court should have granted Armour's motion to sever the case when the state introduced Thomas' statement implicating Armour, in order to avoid possible prejudice to Armour's Sixth Amendment right to confront the witness against him. The defendant requesting a severance "must make a clear showing of prejudice and a consequent denial of due process." *Cain v. State*, 235 Ga. 128, 129 (218 SE2d 856) (1975). The trial judge has the discretion to grant a severance "before or during the trial whenever it appears 'necessary to achieve a fair determination of the guilt or innocence of a defendant.' " Id. at 129 (quoting American Bar Association Minimum Standards relating to joinder and severance). In exercising this discretion the court considers three factors: "Whether a joint trial will create confusion of evidence and law; whether there is danger that evidence implicating one defendant will be considered against the other, despite cautionary instructions to the contrary; and

---

[1] Immediately prior to Thomas' cross-examination by the state, Armour made two motions in anticipation of the state's introduction of the statement. Armour offered a certified copy of Thomas' prior conviction and moved on the basis of the confrontation clause of the Sixth Amendment that he be allowed to impeach Thomas with the conviction in the event that Thomas' statement implicating him was introduced. When this motion was denied, Armour renewed his motion claiming that a severance was necessary to avoid an abridgement of his right to fully confront and cross-examine Thomas as a witness against him. The motion to sever was also denied.

[2] Under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), Thomas' statement implicating Armour would have been inadmissible until Thomas elected to testify and became subject to cross-examination by Armour. *Nelson v. O'Neil*, 402 U. S. 622 (91 SC 1723, 29 LE2d 222) (1971). "The confrontation clause is not violated by admitting a declarant's out-of-court statement as long as the declarant is testifying as a witness and subject to full cross-examination." *Durham v. State*, 240 Ga. 203 (240 SE2d 14) (1977).

whether the co-defendants will press antagonistic defenses." *Harrell v. State*, 253 Ga. 474, 475 (321 SE2d 739) (1984). We agree that the state's use of Thomas' statement implicating Armour introduced an element of antagonism between the co-defendants, and that the trial court's refusal to sever had the effect of limiting Armour's Sixth Amendment right to confront Thomas on cross-examination with the prior conviction. However, antagonism alone between co-defendants is not enough to require severance, rather Armour must also demonstrate he was harmed by the failure to sever. *Cain*, supra at 129-130.

In *Terry v. State*, 190 Ga. App. 570, 571 (379 SE2d 604) (1989), we briefly observed without reaching the issue, that where co-defendants have antagonistic defenses, to preclude a defendant from introducing evidence of the other defendant's prior criminal record may deny that defendant his right to a thorough cross-examination of the witnesses against him. " '[T]he Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the states by the Fourteenth Amendment. It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him.' " *Lingerfelt v. State*, 235 Ga. 139, 140 (218 SE2d 752) (1975) (quoting from *Pointer v. Texas*, 380 U. S. 400, 403 (85 SC 1065, 13 LE2d 923) (1965). However, the confrontation clause does not prevent the trial judge from imposing any limits on cross-examination.

"On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. . . . We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a *prototypical form of bias on the part of the witness*, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " (Citation omitted and emphasis supplied.) *Delaware v. Van Arsdall*, 475 U. S. 673, 679-680 (106 SC 1431, 89 LE2d 674) (1986).

Armour sought to impeach Thomas with an unrelated prior criminal conviction, not for the purpose of showing some form of bias, but for the sole purpose of impeaching the general credibility of the witness. In *Davis v. Alaska*, 415 U. S. 308, 316 (94 SC 1105, 39 LE2d 347) (1974), the court distinguished between a general attack on a witness' credibility by use of a prior criminal conviction and the more focused attack "by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness

as they may relate directly to issues or personalities in the case at hand." In both *Davis* and *Delaware* violation of the confrontation clause was found in limitations to cross-examination of a witness for potential bias. In concurring with the majority opinion in *Davis*, Justice Stewart emphasized "that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past . . . criminal convictions." *Davis*, supra at 321. Thomas' prior robbery conviction was unrelated to any bias or other relevant issue in the case. Thomas himself vigorously denied that he made the statement implicating Armour in the armed robbery. Moreover, to prove that Thomas was a convicted robber would have been of questionable value to Armour in defending the theft by receiving charge since he was arrested in the company of Thomas in possession of the stolen automobile. Under these circumstances the trial judge acted within his discretion, and Armour was afforded his Sixth Amendment right to an effective cross-examination. See *Johnson v. State*, 258 Ga. 504, 505-506 (371 SE2d 651) (1988).[3]

Accordingly, we find no clear showing of prejudice or denial of due process resulting from the refusal to sever. The trial judge did not abuse his discretion in denying Armour's motion for severance.

6. In his third enumeration of error Armour contends the evidence was insufficient to support his conviction for theft by receiving the stolen automobile. Armour was apprehended driving the stolen car nine days after the armed robbery. Thomas, who was positively identified by the victim as the armed robber, was a passenger in the car with Armour. Although the victim testified she could not positively identify the man with Thomas during the armed robbery, she did testify she was "thirty-five percent sure" that Armour was the other man participating in the armed robbery. Additionally, as the arresting officer followed the suspected stolen car, the passenger, Thomas, acted suspiciously as he kept turning around to look at her. When the officer followed the car to an apartment complex, she observed Armour back the car into a parking place, putting the vehicle tag out of her view. The officer positioned her patrol car in front of the stolen car and called for assistance. She remained in her patrol car as Armour and Thomas sat in the stolen car looking at her for approximately three to four minutes, before both men exited the car

---

[3] Whether or not it was error to prevent Armour from impeaching the general credibility of Thomas in the context of the armed robbery charge is a closer question. On that charge the State relied heavily on Thomas' statement implicating Armour, so any impeachment of Thomas' credibility had the potential to do serious damage to the State's case. However, we need not address this issue since any such error was rendered harmless when the jury found Armour not guilty of the armed robbery. See *Delaware v. Van Arsdall*, supra at 475 U. S. 683-684.

and began to walk off in opposite directions prior to being placed under arrest. Armour did not testify at trial, although in his statement to police, elicited by Armour's counsel during cross-examination, he claimed that he had borrowed the car from a friend and did not know it was stolen. "Possession (of stolen property) alone is not sufficient to show guilty knowledge; however, possession together with other circumstances and evidence may be used to infer the knowledge required by the statute." *Ingram v. State*, 160 Ga. App. 300 (287 SE2d 304) (1981). Whether Armour's explanation of how he came into possession of the car was believable was a jury question. Id. His recent possession of the stolen car, along with the other attendant circumstances, was a sufficient basis for a rational trier of fact to find Armour guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed in part, reversed in part, and case remanded with direction in Case No. A91A0247. Judgment affirmed in Case No. A91A0248. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED APRIL 3, 1991 —
REHEARING DENIED APRIL 23, 1991 — ▆▆▆▆▆▆▆

*William V. Hall, Jr.*, for appellant (case no. A91A0247).
*John H. Tarpley*, for appellant (case no. A91A0248).
*Robert E. Wilson, District Attorney, Barbara B. Conroy, Gregory A. Adams, Assistant District Attorneys*, for appellee.