## A96A0775. LETLOW v. THE STATE.
(474 SE2d 211)

McMurray, Presiding Judge.

Defendant was charged by special presentment with two counts each of aggravated child molestation, solicitation of sodomy, child molestation, and contributing to the delinquency of minors, for conduct directed at his two minor nieces, "C. C." and "M. C." The evi-

dence adduced at defendant's jury trial, construed to uphold the verdict, revealed the following: C. C., then aged 13, testified that defendant would provide alcohol and marijuana for herself, for M. C., and for her cousin, defendant's minor son. "[T]he first time[, defendant] called [C. C.] in there[, the living room, . . .] he said he wanted to eat [her]." As part of a game called "Truth or Dare," defendant made C. C. perform fellatio upon him. C. C. also witnessed her then ten-year-old sister, M. C., submit to this sexual requirement. M. C., aged 11 at trial, testified she started avoiding visits with defendant, her uncle, "[b]ecause he made [her] feel uncomfortable because he wanted to touch [her]." M. C. described defendant's version of the game "Truth or Dare," as where "you go around in a circle and when you get to somebody else, whenever it's somebody's turn, they ask you Truth or Dare, and if you say Truth, then they tell you, then they say something and you have to say yes, it's true, or no it's not true, and if they say Dare, then they will dare you to do something." M. C. had to touch defendant and his son "[o]n [their] privacy." M. C. affirmed that she "put [her] mouth on [defendant's] privacy . . . [b]ecause he dared [M. C.] to and [she] was scared that if [she] didn't that [defendant] might hurt [her] or tell [her] to go to bed or something like that." M. C. had played and lost at strip poker after defendant "taught [her] how to play it." Defendant also gave marijuana and beer to M. C. Defendant once "said that he'd give [M. C.] a sucker if [she would] hug him[,] and [she] hugged him and he touched [her] privacy." When the victims told their mother about weekends with defendant, "[t]hey were very upset. They were embarrassed. They were ashamed." Melissa Utley, an investigator for the Lee County Department of Family & Children Services, investigated "the allegation that [defendant] had sexually abused some children[.]" She spoke once with C. C. and M. C., in her office. C. C. told Melissa Utley "that she would go over to her uncle's house on the weekends that she was supposed to stay with her dad and they would play games, Truth or Dare and strip poker, and when [Melissa Utley] talked to [C. C.] further and interviewed her further [C. C.] told [Melissa Utley] a little bit about the games and saying that she would have to touch [defendant's] penis, she'd have to touch it with her hand or her mouth." "[M. C.] said the same thing. That she — One time she played the games too. One weekend that she was there also." "Both of the girls admitted [to Melissa Utley] that there was alcohol and pot." Special Agent David Lafontaine of the Georgia Bureau of Investigation also interviewed C. C. and M. C. He affirmed that the gist of each victim's testimony in court was "about the same . . ." as statements they gave in prior interviews. Special Agent Lafontaine also interviewed defendant about the allegations. Defendant thought that "the children were ill and needed psychological help, that this didn't hap-

pen, that they were lying." Defendant also told Special Agent Lafontaine that "[h]e doesn't drink alcohol [at present] nor smoke or consume marijuana."

The jury found defendant guilty as charged on each of the eight counts. His motion for new trial was denied and this appeal followed. *Held*:

1. Defendant contends the trial court erred in recharging the jury. The presentation of evidence took one day and the jury deliberated for a short period before being released for the evening. The next morning, the jury deliberated for an additional 45 minutes, whereupon the following transpired: "FOREMAN: We have not reached a decision yet as far as — we're not unanimous. THE COURT: I understand. You must be unanimous. FOREMAN: Sir? THE COURT: You must be unanimous. FOREMAN: Well, we can't — we're trying but we're not getting anywhere. THE COURT: You haven't reached a decision on any charge? There are eight counts. FOREMAN: No, sir. Well, some of us have and, you know, we're just not in total agreement. THE COURT: Well, that's what you're back there for is to deliberate. So go back there and deliberate until you are unanimous. FOREMAN: Well, it doesn't look like — I mean, we're trying but we're just not — THE COURT: You see, this case is going to be decided by some jury and there is no jury any better qualified to decide than you are. So I think you need to get back there and reason with one another and come to some unanimous decision. You may return to the jury room." Approximately 50 minutes later, the jury returned unanimous guilty verdicts on each of the eight counts of the special presentment. Defendant argues that this recharge "caused some jurors to abandon honest convictions for reasons other than those based on the trial and the arguments of other jurors," because the trial court did not also instruct that no juror should be required to give up an honest conviction in his deliberations. We disagree. "The need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court. *Walter v. State*, 256 Ga. 666, 668-669 (352 SE2d 570) (1987)." *Peebles v. State*, 260 Ga. 165, 167 (5) (a) (391 SE2d 639). "The supplemental instructions given in this case are consistent with [Standard 15-4.4 (b) of the American Bar Association Standards for Criminal Justice], and did not single out jurors in the minority as being the only ones who might reasonably be asked to re-examine their views. . . ." *Romine v. State*, 256 Ga. 521, 525 (1) (c), 527 (350 SE2d 446). Consequently, we find no abuse of the trial court's discretion. Compare *Sanders v. State*, 162 Ga. App. 175 (290 SE2d 516). In *Sanders*, the trial court erroneously instructed the jury, in part, " 'this was a simple case and if you can't remember the evidence, I'm not going to help you any further with it. There are 12 of you and you should go back in there and sit down and

talk among yourselves and determine what the evidence is. . . . It's sort of like a puzzle. If you can't figure the puzzle out, *you'll just have to stay in there until you do.* That's just the way it is.'" (Emphasis supplied.) 162 Ga. App. 175, 176, supra.

2. Ms. Terri Shook, an Enforcement Agent for Child Support in Dougherty County, is the mother of K. S., a 12-year-old friend of the victims who was with them in defendant's home on the night in question. Ms. Shook was permitted to relate statements made by her daughter, K. S., as to the acts committed by defendant on the victims in the presence of K. S. See OCGA § 24-3-16 as amended by Ga. L. 1995, p. 937, § 1. In his second enumeration, defendant contends the trial court erred in restricting his cross-examination of Terri Shook, under the following circumstances: "[STATE'S ATTORNEY]: Prior to February 18th, you had never met this man [(defendant)] before? [WITNESS]: No. [STATE'S ATTORNEY]: Did you ever have any problems with him, any bone to pick with him, any hostilities against him? You didn't know him, period? [WITNESS]: I didn't know him. . . . [Whereupon, cross-examination ensued.] [DEFENSE COUNSEL]: Ms. [Witness], you have one child, not [K. S.], that was alleged to have been molested. Is that true? [STATE'S ATTORNEY]: Judge, at this time I'm going to object. He is referring to an incident that occurred ten years ago. There is no relation to this case or this defendant, and unless he can —. THE COURT: Who is it you're asking about? [STATE'S ATTORNEY]: About another child belonging to — [DEFENSE COUNSEL]: Her sister, Your Honor. THE COURT: I sustain the objection." Defendant argues that the circumstance of a prior molestation against one of her own children was relevant to the credibility of the witness because "[i]t shows that she is biased or prejudice[d] against [defendant]."

"The state of a witness's feelings towards the parties and his relationship to them may *always* be proved for the consideration of the jury." (Emphasis supplied.) OCGA § 24-9-68. "Evidence tending to show motive is *always* relevant and admissible. *Wall v. State*, 126 Ga. 86 [(hn. 4)] (54 S.E. 815); *Boone v. State*, 145 Ga. 37[, 39 (1)] (88 S.E. 558)." (Emphasis supplied.) *Wall v. State*, 153 Ga. 309, 315 (1), 316 (112 SE 142). " 'The purpose of cross-examination is to provide a searching test of the intelligence, memory, accuracy, and veracity of the witnesses, and it is better for cross-examination to be too free than too much restricted.' *Ledford v. State*, 89 Ga. App. 683, 684 (1), 685 (80 SE2d 828). 'Wherever the purpose is to impeach or discredit the witness, great latitude should be allowed by the court in cross examinations,' *Mitchell v. State of Ga.*, 71 Ga. 128, 129 (hn. 6)." *Snelling v. State*, 215 Ga. App. 263, 264 (1) (a), 265 (450 SE2d 299). In our view, a prior act of molestation committed against the child of a witness is relevant to show any possible bias against an accused child

molester that the witness may entertain, unconsciously or deliberately. The trial court erred in restricting defendant's cross-examination of the witness with respect to any possible bias.

"Nevertheless, the question remains whether this undue limitation of cross-examination and erroneous exclusion of relevant [impeachment] evidence was 'harmful error requiring a reversal (of defendant's conviction[s] . . .) and a new trial. (The Supreme Court of Georgia) has adopted the highly probable test when determining if an error is harmless. If it is highly probable that the error did not contribute to the judgment then the error is harmless. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).' *Owens v. State*, 248 Ga. 629, 631 [(284 SE2d 408)]. 'The proper test to determine whether error is harmless (due to overwhelming evidence of guilt) is not whether there is sufficient other evidence to convict but whether "it is highly probable that the error did not contribute to the judgment." (Cit.)' *Ragan v. State*, 264 Ga. 190, 192 (3) (442 SE2d 750)." *Snelling v. State*, 215 Ga. App. 263, 266 (1) (c), supra. In the case sub judice, the possible bias of the mother of a friend of the victims does nothing to impeach the direct testimony of the victims themselves. The direct testimony of each victim corroborates that of the other victim. Their direct testimony was further corroborated by the testimony of their own mother, Seretha Barnett, as well as by physical evidence of alcohol consumption discovered by Special Agent Lafontaine. In light of this abundant evidence, it is highly probable that the lack of the desired cross-examination did not contribute to the jury's guilty verdict and the judgment of conviction. Consequently, the trial court's erroneous restriction of defendant's attempted cross-examination was harmless in this particular instance.

3. Next, defendant contends the trial court "erred in admitting the out-of-court hearsay statements of numerous prosecution witnesses where no showing of the reliability of such statements was made by the State."

The hearsay statements objected to are admissible under OCGA § 24-3-16, the Child Hearsay Statute. The two victims testified and were cross-examined. This was sufficient under *Sosebee v. State*, 257 Ga. 298 (357 SE2d 562), to afford the trial court an opportunity to weigh the indicia of reliability. That finding of reliability is implicit in the admission of evidence relating statements by a child, describing any act of sexual contact or physical abuse, through the testimony of the persons to whom the child made the statements. *Roberson v. State*, 214 Ga. App. 208, 210 (5) (447 SE2d 640).

As to the evidence of Terri Shook, relating statements made by her daughter who witnessed some of the acts of molestation, defendant fails to show where he objected to such evidence or asked the trial court to call the child witness, K. S. " ' "All evidence is admitted

as of course, unless a valid ground of objection is interposed, the burden being on the objecting party to state at the time some specific reason why it should not be admitted. A failure to make such objection will be treated as a waiver, and prevent the court, on a motion for new trial, from inquiring as to the competency of the evidence." *Andrews v. State*, 118 Ga. 1 (43 SE 852).' *Hall v. Browning*, 71 Ga. App. 835 (3) (32 SE2d 424)." *Kemira, Inc. v. Williams Investigative &c. Svcs.*, 215 Ga. App. 194, 195, 196 (1) (a) (450 SE2d 427). In our view, defendant waived any valid objection to the foundation for Terri Shook's testimony, relating statements by her daughter that she (the daughter) witnessed defendant induce the two victims into performing acts of oral sodomy upon him. Consequently, this enumeration is without merit.

4. The trial court granted defendant's pre-trial motion in limine and conditionally excluded from evidence a note written by Terri Shook's daughter, K. S., to one of the victims, C. C. This note recounted or recited some of the sexual events K. S. told her mother she witnessed and about which C. C. testified before the jury. The trial court further ruled, however, that the State could elicit the circumstances under which the mother found the note. On direct examination of Terri Shook by the State, the following transpired: "[STATE'S ATTORNEY]: [W]as there anything in particular in that note, without disclosing the note, any one particular item that, as a mother, concerned you, that you found in that letter? [WITNESS]: My daughter was asking [C. C.] in the note — [DEFENSE COUNSEL]: Your Honor, this is becoming dangerously close to stating the contents of the letter. . . . [STATE'S ATTORNEY]: Your Honor, this would be a statement made by a child about an act of molestation. It's clearly covered by the Child Hearsay Statute, especially as it was amended July 1, 1995. . . . THE COURT: That's all right. I'm familiar with it. I overrule the objection. You can continue. [STATE'S ATTORNEY]: Thank you. We don't intend to give it [(the note)] to the jury, Judge, just to solicit comments about the note." Thereafter, Terri Shook testified that she read her daughter's note which queried of C. C. whether defendant was " 'high when he asked you [(C. C.)] to give him a blow job,' " and " 'Was he [(defendant)] wanting you to give him a blow job so that Smitty could come over?' " Terri Shook subsequently testified that her daughter, K. S. "told me that [defendant] had approached [C. C.] and she was wanting — she had a boyfriend that she had a crush on named Smitty. She was wanting him to come over and [defendant] told her that if she gave him [defendant] a blow job that he would let Smitty come over." Defendant argues that the "incriminating portion of the letter [as] recited by witness Terri Shook . . . was rank hearsay and should have been excluded." The State argues for the first time that the letter "explained why the

child disclosed the defendant's crimes," and was admissible as original evidence under OCGA § 24-3-2.

There is considerable doubt that the contents of a sealed note, not addressed to Terri Shook (the only witness before the jury), was admissible via Terri Shook's testimony under the Child Hearsay Statute, even as recently amended. Although the note graphically recounts acts of sexual conduct with a minor as witnessed by the author, yet that note does *not* appear to be a *statement to Terri Shook* about the events therein related, as required by OCGA § 24-3-16. "Contrary to the State's contentions, this testimony [relating the contents of the note] would *not* be admissible as original evidence under OCGA § 24-3-2, since [Terri Shook's] conduct and motives were *not* at issue. [See] *Black v. State*, 190 Ga. App. 137 (1) (378 SE2d 342) (1989). . . . Accordingly, the trial court erred in permitting [Terri Shook] to testify as to what [her daughter wrote, describing what] she saw [being] done to the other [minor girls in defendant's trailer]. However, as the record shows that this testimony was merely cumulative of [other] testimony [properly admissible under OCGA § 24-3-16 as amended], the error was harmless. *Brinson v. State*, 191 Ga. App. 151, 152 (2) (381 SE2d 292) (1989)." *Assad v. State*, 195 Ga. App. 692, 693 (2) (394 SE2d 617).

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

DECIDED JULY 9, 1996 —
RECONSIDERATION DENIED JULY 18, 1996 — 

*Donald D. Rentz, Mark T. Phillips*, for appellant.

*John R. Parks, District Attorney, Barbara A. Becraft, Assistant District Attorney*, for appellee.