A97A0161. FARLEY v. THE STATE.
(484 SE2d 711)

ELDRIDGE, Judge.

Anthony James Farley, appellant, was convicted on October 12, 1995, of armed robbery and sentenced to serve five years. Appellant's motion for new trial was denied on March 20, 1996. Appellant timely filed his notice of appeal on April 15, 1996.

On September 13, 1993, at about 10:05 p.m., the Super 8 Motel on Sullivan Road in College Park, Clayton County, was held up at gunpoint and cash was taken by appellant. Dian J. O'Hara was the night duty clerk who was forced at gunpoint to give up the money. The appellant entered the motel lobby through the front door, approached the desk and inquired about a room, appeared to leave when told that no rooms were available, and then returned to the manager's office with a drawn gun demanding money. O'Hara described appellant as being a black male, in the mid-thirties,

approximately five foot eight inches tall, about 160 pounds in weight with a droopy eye, and wearing a dirty, white tee shirt, beach type shorts, and a baseball cap. As appellant left with the money, he jerked the telephone out of the manager's office, dropped it in the lobby, and pushed open the glass front door with his bare hands. The glass door was cleaned daily, usually between 7:30 and 8:30 p.m., and had been cleaned that evening prior to the armed robbery. Detective E. W. Strozier, who had been trained in lifting fingerprints, dusted the telephone and the front door and successfully lifted two good latent prints from the clean door glass, but all other prints were too smudged to be used. The detective sent the prints to the State Crime Laboratory where the AFIS (Automated Fingerprint Identification System) screened the prints for a tentative match with appellant's fingerprints on file there; crime lab technician Larry Hankerson, a fingerprint identification expert, examined the latent prints from the Super 8 Motel with the identification card containing appellant's prints and determined that the prints matched. Deputy Sheriff Samuel Smith of the Clayton County Sheriff's Department, a finger-print identification expert, at trial also identified the latent prints and appellant's fingerprint card as a match.

In the lobby of the motel was a video camera, which took still pic-tures of the lobby every four seconds and then rotated to take a pic-ture of the rear door. The crime lab was able to enhance the two sin-gle frames that showed appellant so that he was recognizable. The armed robbery, as determined by the timing from the video, took less than 49 seconds. About one month after the crime lab print identifi-cation work, the detective took a photo array of six different black males, including appellant, to O'Hara to see if she could identify appellant; the eyewitness picked appellant out without any trouble. A warrant for the arrest of appellant was obtained. After arrest and *Miranda* warnings had been given and appellant agreed to talk, appellant initially stated that he did not know where College Park was and had not been in the motel; he later admitted that the picture was of him. At trial appellant chose not to testify in his own defense. O'Hara made a positive in-court identification of appellant as the armed robber.

After O'Hara had testified, the defense counsel made an offer of proof about what happened at a bench conference where he sought permission to cross-examine O'Hara regarding any prejudice that she might have against black males. Counsel did not seek to cross-examine O'Hara outside the presence of the jury to lay a proper foun-dation for such questioning nor did he ask the witness O'Hara if she held any ill will or prejudice against *appellant* for the armed robbery. His offer of proof on the record was that, "she had indicated to me very strongly prior to coming to trial today that she had been robbed

and recently raped by a black male and that now she actually did have a problem with blacks. . . . I wanted to . . . ask the Court for its permission to properly cross examine her. . . . If that doesn't go to attack her credibility and her bias towards black males whom she's also accused of robbing her. . . . She specifically is the witness that can identify this particular man who is black. That's relevant as to her bias and credibility. It's extremely relevant that perhaps then she was also bias. Now it's coming out that she's been violently attacked by another black male, so she has a bias there. . . . [S]he stated that yes now she has a problem with blacks. She has a problem with blacks." The district attorney objected on the grounds of relevancy, because this armed robbery and rape about which defense counsel wished to cross-examine the witness had occurred after, not only to the case sub judice, but also *after* the photo array identification of appellant. The trial court denied the right to cross-examine upon such subject matter.

Appellant's sole enumeration of error is that the trial court erred in not permitting a thorough and sifting cross-examination into the racial bias and credibility of the state's eyewitness, who was the crime victim and was the only direct evidence linking the defendant with the crime.

The two enhanced video camera photographs of appellant during the armed robbery were direct evidence that appellant committed the crime; appellant's fingerprints taken from the door immediately after the crime from a freshly cleaned surface also constituted direct evidence. The description of appellant given immediately after the crime, the positive identification by O'Hara 30 days after the crime, and her in-court identification of appellant, all proved the guilt of appellant beyond a reasonable doubt. Although appellant's counsel on cross-examination raised several conflicts in O'Hara's testimony as to which eye drooped, which hand the gun and money were in when appellant exited the motel, and when, precisely, the front door glass was cleaned, the jury, apparently, found O'Hara's testimony sufficiently corroborated by fingerprints and action photographs as to be sufficient to prove appellant's guilt. Moreover, O'Hara made the identification of appellant *prior* to the second armed robbery and rape so that identification of appellant could not have been affected by what had occurred subsequently. O'Hara underwent extensive cross-examination and was even recalled by the defense during the defense case for further examination as a witness for the defense.

In *Davis v. Alaska*, 415 U. S. 308, 316 (94 SC 1105, 39 LE2d 347) (1974), the United States Supreme Court held that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. . . . [T]he cross-examiner is not only permitted to delve into the witness' story to test

the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness. One way of discrediting the witness is to introduce evidence of prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of a witness. A more particular attack . . . is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they relate *directly* to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*, 360 U. S. 474, 496 (1959)." (Footnote omitted; emphasis supplied.) See accord *Hines v. State*, 249 Ga. 257, 259-260 (2) (290 SE2d 911) (1982).

The bias and prejudice of *Davis v. Alaska*, supra, must be specific to the case, arising from a self-interest or self-preservation motive that could be reasonably inferred to cause testimony to be shaded or distorted by a trier of fact; a generalized attitude would not satisfy such interest of the witness, especially when such attitude arises after the fact. Absent such foundational facts such as a pending criminal charge about which the witness seeks assistance from the prosecution, there can be no cross-examination on such subject, because a dismissed charge or an old conviction could not be the basis of a motive to shade or distort testimony. *Wright v. State*, 266 Ga. 887, 889 (2) (471 SE2d 883) (1996); accord Justice Stewart's concurrence in *Davis v. Alaska*, supra at 321; see also *Kinsman v. State*, 259 Ga. 89, 91 (7) (b) (376 SE2d 845) (1989); *Baynes v. State*, 218 Ga. App. 687, 690-691 (4) (463 SE2d 144) (1995); *McBee v. State*, 210 Ga. App. 182 (1) (435 SE2d 469) (1993); *White v. State*, 201 Ga. App. 53, 55 (2) (410 SE2d 441) (1991). A charge that was dismissed prior to the trial would not permit a cross-examination into it for such purpose. *Williams v. State*, 172 Ga. App. 87 (2) (322 SE2d 98) (1984).

In *Delaware v. Van Arsdall*, 475 U. S. 673 (106 SC 1431, 89 LE2d 674) (1986), the Supreme Court reaffirmed *Davis v. Alaska*, supra, regarding cross-examination of a witness with pending criminal charges as reflecting possible self-interest in assisting the prosecution. "We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a

prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' *Davis v. Alaska*, supra at 318. Respondent has met that burden here: A reasonable jury might have received a significantly different impression of Fleetwood's credibility had respondent's counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall*, supra at 680.

Following *Delaware v. Van Arsdall*, the United States Supreme Court reversed in *Olden v. Kentucky*, 488 U. S. 227 (109 SC 480, 102 LE2d 513) (1988), finding a violation of the right to confrontation. The defendant, a black male, was convicted of raping his half-brother's lover, a white female, who was married to another, but at the time of trial was living with the half-brother. The defense was that sex had been consensual and that the woman, at her request, had been let out of the car near the brother's home; the brother saw him drive off after leaving the woman and immediately became suspicious of them; the defense was that the woman falsely claimed that the defendant had raped her to protect her relationship with his brother. The trial court prohibited cross-examination as to the relation between the woman and the brother at the time of trial and that they were living together at that time as evidence of her motive to lie. The woman had been impeached by numerous conflicts in testimony regarding how many men had raped her or aided in the rape. The specific area of inquiry on cross-examination was highly relevant to the case, was supported by known facts, and involved the witness' self-interest as it related to the facts of the case, which was similar to *Davis v. Alaska*, supra. Race was a tangential issue and was not the underlying purpose for the cross-examination, however, it was a factor in the exclusion by the trial court. See also *Gibbs v. State*, 196 Ga. App. 140 (3) (395 SE2d 387) (1990) (holding that cross-examination was not applicable on the facts).

For specific cross-examination as to bias and prejudice, such bias and prejudice must be related to the facts of the case, and the facts must show a self-interest or self-preservation motive to lie in such *case*, itself; there must be a factual predicate laid outside the presence of the jury to permit such cross-examination. Such evidence must demonstrate not merely a fishing expedition, but must show a specific bias for the prosecution or prejudice against the accused arising from a self-interest, so that a reasonable trier of fact could infer the likelihood of testimony being shaded or falsified as a consequence. Absent such factors being present, there would be no denial of the right of confrontation within the meaning of *Davis v. Alaska*, supra. See also *Johnson v. State*, 258 Ga. 504, 505 (3) (371 SE2d 651) (1988); *Thomas v. State*, 199 Ga. App. 586, 588-591 (5) (405 SE2d

512) (1991), rev'd on other grounds, 261 Ga. 854 (413 SE2d 196) (1992).

"On the contrary, the trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, supra at 679; *Gibbs v. State*, supra at 142. To justify court sanctioned fishing in the murky and dangerous currents of racial bias or prejudice, there must be a foundation laid, sufficient to justify the risk of dredging up passions that may overcome the jury or the public, undermining the administration of justice and the perception of equal justice. Only a potential violation of due process by denial of the right of confrontation in the proper case, supported by the proper evidentiary basis, will justify the application of the balancing test in *Davis v. Alaska*, supra, permitting such cross-examination. General racial bias or prejudice alone would not be sufficient. Such bias or prejudice must be accompanied by a showing that there exists evidence of a specific intent to harm the accused such that a rational trier of fact could reasonably infer shading of evidence or deception or a personal self-interest or self-preservation motive by the witness, in such case, that could give rise to an inference of deception or shading the evidence against the accused. Such foundation would have to be established outside the presence of the jury to satisfy the trial court that it can be factually proven. In the case sub judice, no such evidence was proffered, and only a generalized negative attitude, arising after the facts about which the witness testified, could be shown which was not established as hostile to appellant. The identification occurred long before the occurrence that gave rise to the negative feelings, so that the identification could not have been influenced by such feelings. There was no violation of the right of confrontation in the case sub judice.

*Hardy v. State*, 223 Ga. App. 597 (478 SE2d 423) (1996) provides no support to appellant's appeal, because in that case the statement of a co-defendant, which was inculpatory to Hardy, was admitted over objection and the co-defendant refused to testify at trial so that Hardy was denied the right of confrontation by the admission of the hearsay statement and the co-defendant's assertion of his Fifth and Fourteenth Amendment rights against self-incrimination. In such case there was a total denial of the right of cross-examination as part of the constitutional right of confrontation. In such case there was an unquestioned violation of a constitutional right under the United States Constitution; in light of such admitted constitutional violation, the determination of harm had to be made based upon United States Supreme Court standards and not state standards. In the case

sub judice, the appellant was allowed a thorough and sifting cross-examination and the trial court exercised its discretion in limiting, not denying, areas of inquiry, which *Delaware v. Van Arsdall*, supra at 679-680, held was permissible. This Court has found no constitutional right of confrontation violation so that the constitutional analysis of harm does not apply.

OCGA § 24-9-68 provides that "[t]he state of a witness's feelings toward the parties and his relationship to them may always be proved for the consideration of the jury."

"[I]f the prosecutor was a witness against the defendant, then the state of his feelings, or any other witness' feelings, toward the defendant may be proved for the consideration of the jury as illustrating their credibility. *Walker v. Rome*, 6 Ga. App. 59 (64 SE 310) [(1909)]. But the rule relative to the procedure to prove ill feeling is that, if the witness is asked if he has ill will toward the defendant and replies in the affirmative, it is not competent to go into the particulars of the ill feeling or the cause of the hostility. To admit such testimony would multiply issues and tend to confuse the jury. Had the witness replied that he had no ill will, it would have been proper on further cross-examination to ask about an occurrence which, if true, would have authorized a finding that ill will existed. Had the witness denied that, the accused would have been entitled to prove the contrary. But this would not justify an investigation of a mere collateral issue or of the particulars of the occurrence. *McDuffie v. State*, [121 Ga. 580, 584 (7) (49 SE 708) (1905)]. Here the witness had not been asked whether he had unkindly feelings toward the accused, and it was not competent to go into the details of the occurrence in question. [Cits.]" *Walker v. State*, 74 Ga. App. 48, 50 (1) (39 SE2d 75) (1946). See accord *Robinson v. Murray*, 198 Ga. 690, 704-705 (7) (32 SE2d 496) (1944); *Collins v. State*, 191 Ga. App. 289, 291 (3) (381 SE2d 430) (1989); see also *Shropshire v. State*, 210 Ga. App. 241, 242 (1) (435 SE2d 700) (1993).

In the case sub judice, the witness was never asked what her personal feelings were toward the accused so that further inquiry into the basis for any bias or prejudice that she might have against African-Americans would not be relevant, because the required foundation had not been laid to show her feelings toward appellant. If she answered that she had ill will against the appellant, then the inquiry could go no further. If she answered that she had no ill will, then the appellant would be able to go into the occurrence of the subsequent armed robbery and rape by an African-American male, but would not be able to go into the statement about her racial feelings in general or her statement to defense counsel, because the jury would be permitted on their own to draw an inference of ill will or hostility against appellant from the fact of the occurrence and not from any

generalized attitude or "particulars of the occurrence." *Walker v. State*, supra at 50; *Collins v. State*, supra at 291.

"A witness may be discredited by showing that his impartiality is affected by motives arising from interest or partisanship, bias, or prejudice. The hostility of the witness may be shown by the witness himself or by extrinsic evidence, but the evidence must be direct and pointed and not indirect and uncertain; and the unfriendly feeling must be shown to exist at the time of trial. [Cit.] The extent to which a witness may be cross-examined is ordinarily a matter of discretion with the presiding judge. . . . But the court has the right to require that the questions be direct and positive and in a proper form, not argumentative, which will call for a clear and direct answer, thus expediting the trial of the case and avoiding the injection into the case of collateral issues not material to the determination of the cause." *Loomis v. State*, 78 Ga. App. 153, 167-168 (8) (51 SE2d 13) (1948); see *Davis v. State*, 266 Ga. 801, 803 (6) (471 SE2d 191) (1996); *Arnold v. State*, 163 Ga. App. 10, 13 (4) (293 SE2d 501) (1982).

Collateral attack on the credibility of a witness is not a proper method of impeachment to establish bias, prejudice, interest, or corruption when such attack is founded upon irrelevant or even marginally relevant evidence. See *Haynes v. State*, 180 Ga. App. 202, 203-204 (3) (349 SE2d 208) (1986); *Parrish v. State*, 141 Ga. App. 631, 632 (2) (234 SE2d 174) (1977); see also *Lee v. State*, 258 Ga. 762, 763 (6) (374 SE2d 199) (1988); *Hicks v. State*, 256 Ga. 715, 720 (13) (352 SE2d 762) (1987); *Brown v. State*, 250 Ga. 862, 866 (5) (302 SE2d 347) (1983); *Ramey v. State*, 250 Ga. 455 (298 SE2d 503) (1983).

"Furthermore, ' "anything not legitimately arising out of the trial of the case, which tends to destroy the impartiality of the juror, should be discountenanced." ' *Teasley v. State*, 177 Ga. App. 554, 555 (2) (340 SE2d 32) (1986). It appearing that defense counsel's question injected into the trial an improper element of racial bias, the trial court was authorized to exclude the evidence as irrelevant. *Teasley v. State*, supra." *Mitchell v. State*, 200 Ga. App. 146, 148 (2) (407 SE2d 115) (1991); see also *Shropshire v. State*, supra.

Unless there is evidence produced outside the hearing of the jury from a witness examined under oath with regard to feelings concerning the accused and any occurrence giving rise to such feelings, to create a factual basis that racial bias or prejudice exists and, in fact, influenced the witness' testimony or could be reasonably inferred to do so, such issue of racial bias or prejudice should not be injected into the proceedings, as such issue could tend to destroy the impartiality of the jury and because it would not be relevant. See *Shropshire v. State*, supra at 242; *Mitchell v. State*, supra at 148; *Teasley v. State*, supra at 555.

The trial court has broad discretion in determining the scope and

extent of cross-examination; absent a clear abuse of such discretion, the action of the trial court will not be disturbed. *Ruffin v. State*, 243 Ga. 95 (252 SE2d 472) (1979); *Davis v. State*, 230 Ga. 902, 904 (199 SE2d 779) (1973); *Clifton v. State*, 187 Ga. 502, 508 (2 SE2d 102) (1939).

We find no abuse of discretion or error by the trial judge in excluding such cross-examination.

*Judgment affirmed. Birdsong, P. J., concurs. Ruffin, J., concurs specially.*

RUFFIN, Judge, concurring specially.

The majority concludes that the trial court did not err in prohibiting Farley's proffered cross-examination of the State's witness. Although I disagree with that conclusion, I nonetheless conclude that we should affirm the trial court. As we examine the record for error, we must be ever cognizant of the special relationship error has with harm. If there is little or none, the trial court should be affirmed.

I write separately to express my concerns with the majority's proposed foundational requirement for the introduction of cross-examination testimony concerning racial bias and prejudice. That requirement appears to be as follows: that the "bias or prejudice [is] accompanied by a showing that there exists evidence of a specific intent to harm the accused such that a rational trier of fact could reasonably infer shading of evidence or deception or a personal self-interest or self-preservation motive by the witness, in such case, that could give rise to an inference of deception or shading the evidence against the accused." Majority at 692.

I note initially that although the standard appears to allow a showing of *either* specific intent or self-interest/self-preservation, page 690 of the majority opinion provides that the bias or prejudice "*must* . . . [arise] from a self-interest or self-preservation motive. . . ." (Emphasis supplied.) The same language requiring a showing of self-interest or self-preservation is also stated repeatedly on pages 691 and 692 of the majority opinion. I am not sure whether an accused must make both showings to establish the proposed foundation.

Furthermore, I cannot agree with the required showing of a "specific intent to harm the accused." "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' . . . 'Our cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination.' [Cit.]" *Davis v. Alaska*, 415 U. S. 308, 315 (94 SC 1105, 39 LE2d 347) (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." Id. at 316. An

accused is permitted to attack a witness' credibility by "cross-examination directed toward revealing *possible* biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is '*always* relevant as discrediting the witness and affecting the weight of his testimony.' [Cit.]" (Emphasis supplied.) Id. at 316. Moreover, while cross-examination does not guarantee truth, it will, hopefully, make untruth more difficult.

Although *Davis* requires that the possible bias relate directly to the personality at hand, this is not a requirement to produce evidence that the witness have a specific intent to harm the accused. Rather, evidence of a bias against African Americans generally, where the accused is also African American, could, by inference, relate directly to the accused. "[D]efense counsel [is] permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." Id. at 318.

A jury could find that a witness' testimony is shaded by a general intent to harm the particular class of people of which the accused is a member. One pitfall with the specific intent requirement is that it ignores the real problem concerning prejudices; that they are not limited to particular individuals, but are held against particular classes of individuals. "If the prejudice is to a class, generally, in all probability it extends to individual members of the class." *State v. Harling*, 170 NW2d 720, 724 (Wis. 1969). See also 81 AmJur2d, Witnesses, § 892 (1992). Clearly, this portion of the proposed requirement is too narrowly stated to avoid violations of the Confrontation Clause. See *Harris v. State*, 216 Ga. App. 297 (454 SE2d 146) (1995) (Confrontation Clause not violated where trial court permitted defendant to question arresting officer "regarding any bias he had toward black males. . . ." Id. at 298).

I also disagree with the requirement for a showing that the witness is racially motivated to lie because of "self-interest" or "self-preservation." An interested witness is generally defined as one who "has a stake in the outcome of the case." 81 AmJur2d, Witnesses, § 876 (1992). However, the harms from racial prejudice do not always arise from self-interest or self-preservation. Indeed, life's experiences show that many instances of prejudice arise from mere ignorance. The holder of such prejudice cannot explain why it is in his or her self-interest to harbor the prejudice, but it nevertheless can influence the person's perceptions of those within that group and is relevant in determining the credibility of the person's statements concerning persons within the group.

Our own statute provides that "[t]he state of a witness's feelings toward the parties and his relationship to them may *always* be

proved for the consideration of the jury." OCGA § 24-9-68. (Emphasis supplied.) I am aware of no cases in which we have limited the application of this statute to restrict cross-examination in the manner proposed by the majority. Rather, we have consistently held that "it is better for cross-examination to be too free than too much restricted. Wherever the purpose is to impeach or discredit the witness, great latitude should be allowed by the court in cross-examinations." (Citations and punctuation omitted.) *Letlow v. State*, 222 Ga. App. 339, 342 (2) (474 SE2d 211) (1996). If the goal is to allow great latitude in discrediting a witness, then testimony concerning racial bias or prejudice against the race of the accused should be admissible even without a showing of specific intent to harm the accused or that the witness is motivated by self-interest or self-preservation.

Although I agree with the majority that a defendant should not be permitted to go on a fishing expedition before the jury in an attempt to establish racial bias or prejudice, and that there must be some foundation established, the proposed requirement is too strict. It prohibits exploration concerning known biases and prejudices that by inference a witness may harbor against the accused. The fact that a witness is prejudiced or biased against the class of people of which the accused is a member, is relevant to the witness' credibility and the accused has the right to confront the witness before the jury concerning such fact. See id.

Finally, I do not believe it matters when a witness forms his or her prejudice or bias, so long as *it exists at the time the testimony is given*. Although identification of the accused was an important fact in this case, it was not the only relevant fact. The witness also testified regarding the accused's conduct and language during the robbery. Could not that testimony also have been influenced by racial bias or prejudice? Could not a witness in any case shade his or her testimony with the intent to enrage the jury? A witness' bias or prejudice can subtly infect all of the witness' testimony, not just his or her identification of the accused as the perpetrator.

Although I believe the trial court erred in limiting the defendant's cross-examination concerning the witness' prejudice and bias, based on the evidence of record, I do not believe it caused such harm as requires a new trial. See *Delaware v. Van Arsdall*, 475 U. S. 673, 684 (106 SC 1431, 89 LE2d 674) (1986) (constitutionally improper denial of a defendant's opportunity to impeach a witness for bias is subject to harmless error analysis). Accordingly, I concur in the Court's judgment.

DECIDED MARCH 12, 1997 —
RECONSIDERATION DENIED MARCH 25, 1997 —

*Richard D. Hobbs*, for appellant.
*Robert E. Keller, District Attorney, Todd E. Naugle, Assistant District Attorney*, for appellee.