[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 994 
Rodericus Antonio Heard was indicted on two counts of capital murder resulting from the killing of Betty Weaver. Count I of the indictment alleged that Heard murdered Weaver during the course of a robbery in the first degree, § 13A-5-40(a)(2), Ala. Code 1975. Count II alleged that Heard murdered Weaver "by or through the use of a deadly weapon fired or otherwise used from outside a dwelling while the victim is in a dwelling," § 13A-5-40(a)(16), Ala. Code 1975. Following a jury trial, Heard was convicted of felony murder as a lesser-included offense to the offense charged in Count I, and of capital murder under Count II.
The jury recommended by a vote of 9-3 that Heard be sentenced to life imprisonment without the possibility of parole on the capital-murder conviction. The trial court accepted this recommendation, sentencing Heard to life imprisonment without the possibility of parole for the capital-murder conviction. The trial court sentenced Heard to life imprisonment on the felony-murder conviction.
Heard appealed, [1] and on March 18, 2005, the Court of Criminal Appeals reversed Heard's capital-murder conviction and sentence based on Ex parte Dorsey, 881 So.2d 533
(Ala. 2003). The Court of Criminal Appeals also concluded that remand to the trial court was necessary to conduct an evidentiary hearing as to whether Heard's counsel at trial had rendered ineffective assistance. Heard v. State,999 So.2d 982 (Ala.Crim.App. 2005). The State petitioned this Court for the writ of certiorari; we granted certiorari to review the Court of Criminal Appeals' reversal of Heard's capital-murder conviction.
I. Ex parte Dorsey.
The Court of Criminal Appeals' decision relied on Ex parteDorsey, supra. Dorsey was charged with three counts of capital murder for the death of three individuals — Richard Cary, Scott Williams, and Timothy Crane. Count 1 of the indictment charged Dorsey with murder made capital *Page 995 
because the murders were committed during the course of a robbery, § 13A-5-40(a)(2), Ala. Code 1975. Count 2 charged Dorsey with murder made capital because "two or more persons [were] murdered by the defendant by one act or pursuant to one scheme or course of conduct," § 13A-5-40(a)(10), Ala. Code 1975. Count 3 charged Dorsey with the murder of one of the victims, Crane, made capital because the victim was less than 14 years of age, § 13A-5-40(a)(15), Ala. Code 1975.
This Court stated in Dorsey:
 "At the conclusion of the guilt phase of Dorsey's trial, the trial court instructed the jury on the capital offenses charged in the indictment, as well as certain lesser non-capital offenses included within the capital offenses:
 "`With respect to Count One, the trial court instructed the jury on the capital offense of intentional murder during the course of a robbery. The court also instructed the jury on the lesser-included, non-capital offenses of intentional murder, felony murder, and robbery in the first degree. Each of the murder charges was potentially applicable to each murder victim: Cary, Williams, and/or Crane.
 "`As for Count Two, the trial court instructed the jury on the intentional murder of two or more persons by one act or pursuant to one scheme or course of conduct — a capital offense. The court also instructed the jury on two lesser-included, non-capital offenses: (1) the intentional murder of Cary, Williams, and/or Crane; and (2) the felony murder of Cary, Williams, and/or Crane.
 "`Finally, as to Count Three, the court instructed the jury on the intentional murder of a victim less than fourteen years of age (Timothy Crane)"again, a capital offense. The court instructed the jury that it could — also find Dorsey guilty of the lesser-included, non-capital offense of felony murder of Timothy Crane.[2]
 "State's brief, at 13-14 (citations to reporter's transcript omitted).
 "Unlike capital murder and intentional murder, as defined in § 13A-6-2(a)(1), the crime of `[f]elony murder requires no intent to kill, but only the intent to commit the underlying felony.' Dorsey [v. State], 881 So.2d [460], 511 [(Ala.Crim.App. 2001)]. Under § 13A-6-2(a)(3), Ala. Code 1975, `[a] person commits the crime of [felony] murder if . . . [h]e commits . . . robbery in any degree, . . . and, in the course of and in furtherance of the crime . . . or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person.'
 "The jury returned verdicts convicting Dorsey of the felony murder of Cary under count 1, the felony murder of Williams under count 2, and the capital murder of Crane under count 3. At this point, concerned that the verdicts were inconsistent and/or incomplete, the trial court decided to reinstruct the jury with respect only to some of the charges embraced within count 1. . . .
 "When the trial court reinstructed the jury with regard to Cary and Williams, it limited its instructions to the lesser-included offenses of felony murder and first-degree robbery. However, with respect to Crane, the trial court charged *Page 996 
the jury with regard to both intentional murder and felony murder.
 "After it deliberated a second time, the jury returned verdicts convicting Dorsey of the felony murders of Cary, Williams, and Crane, as well as robbery in the first degree. Dorsey's counsel urged the trial court to accept those verdicts. However, those verdicts did not end the trial. Instead, the trial court decided to instruct the jury a third time regarding the charge that Dorsey had intentionally murdered Crane.
 "In its third instructions, the trial court stated, in part:
 "`I would like for you to go back to the jury room, deliberate and come back and tell me this one question: Do you find the defendant guilty of intentional murder of Timothy Bryan Crane under Count 1 of the indictment, do you find the defendant guilty of felony murder of Timothy Bryan Crane under Count 1 of the indictment or do you find the defendant not guilty of any murder at all of Timothy Bryan Crane under Count 1 of the indictment?'
 "The trial court later told the jury `to go back, deliberate and tell me whether or not you find the State has proved, beyond a reasonable doubt, that the defendant intentionally killed Timothy Bryan Crane.' The jury then returned, stating its `finding [of intentional murder] with regard to the death of Timothy Bryan Crane.'
 "The trial court ultimately accepted verdicts convicting Dorsey of the felony murder of Cary, the felony murder of Williams, robbery, and the capital murder of Crane as charged in count 3 of the indictment."
881 So.2d at 536-37.
This Court held that after the jury was instructed the second time and returned a verdict of felony murder for each of the victims, the conviction of the lesser-included offense of felony murder for the killing of Crane, who was under 14 years of age, necessarily acquitted Dorsey of the greater offense of capital murder of Crane. Dorsey, 881 So.2d at 538. Therefore, this Court concluded that the trial judge erred and violated double-jeopardy principles when it instructed the jury the third time. 881 So.2d at 538-39.
This Court's decision in Dorsey has led to confusion in the lower courts. We take this opportunity to attempt to dispel some of this confusion. In Dorsey, we ultimately held that a conviction for a lesser-included offense was an implied acquittal of the greater offense, as discussed in Jeffers v. United States, 432 U.S. 137,97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). 881 So.2d at 538. In applying this rule to the facts in Dorsey, we held that Dorsey's conviction for the lesser-included offense of the felony murder of Crane impliedly acquitted him of the capital-murder charge regarding Crane, who was less than 14 years of age.
In the present case, the Court of Criminal Appeals applied our holding in Dorsey. However, the convoluted circumstances surrounding Dorsey have made the holding in that case difficult to apply. First, Dorsey began with a duplicitous indictment. Count 1 of the indictment charged Dorsey with three distinct capital offenses in one count of the indictment. Dorsey should have been indicted for three different counts of capital murder committed during a robbery because there were three victims. Although this defect in the indictment did not render the indictment void, it is obvious that the jury was confused when it originally returned verdicts convicting Dorsey of the felony murder of Cary under Count 1, the felony murder of Williams under Count 2, and the capital murder of Crane under Count 3. Essentially, the jury attempted to apply each count of the indictment to one victim when it returned its *Page 997 
verdicts the first time. Furthermore, the jury eventually returned three sets of verdicts, which resulted in additional confusion.
Second, the trial court in Dorsey originally instructed the jury that felony murder was a lesser-included offense to the capital offense of intentional murder of a victim less than 14 years of age. As this Court noted inDorsey, the State did not object to this jury instructions. This Court assumed for purposes of the appeal inDorsey that the instructions were correct. However, under the particular facts of Dorsey, felony murder was not a lesser-included offense of capital murder of a victim less than 14 years of age because there was no underlying felony. Although the trial court correctly charged the jury that felony murder based on the underlying offense of robbery was a lesser-included offense of the capital offense of murder during a robbery under § 13A-5-40(a)(2), robbery was not a lesser-included offense to capital murder of a victim less than 14 years of age because a lesser-included offense is one that does not require proof of elements beyond those required to prove the greater offense. One need not prove robbery in order to prove the capital murder of a victim less than 14 years of age.[3] In the present case, the trial court did not improperly instruct the jury; therefore, this Court is not burdened with the problem of an incorrect jury instruction.
Third, Dorsey involved multiple victims, whereas in the present case, the jury returned two convictions against Heard for the death of one victim.
Therefore, the peculiar factual circumstances inDorsey have led to confusion in the law; the circumstances here are less convoluted. Heard was found guilty of more than one offense based on crimes against one victim.
II. Analysis to be applied when a single defendant is charged with multiple offenses.
Because the decision in Dorsey does not apply to the present case, we must determine what the correct analysis is under a case such as this one: What is the proper procedure for a trial court to follow when a jury returns verdicts finding a defendant guilty of more than one offense based on a crime against one victim?
The special writings in Dorsey and the Court of Criminal Appeals' decision in Heard, as well as the briefs from both parties in Heard, discuss the important issues this Court must address in a case such as this: Whether the verdicts here were inconsistent verdicts or mutually exclusive verdicts. We must also address whether the guilty verdicts against Heard for capital murder and felony murder violated double-jeopardy principles.
 A. Inconsistent verdicts and mutually exclusive verdicts
The caselaw concerning inconsistent verdicts has its underpinnings in Dunn v. *Page 998 United States, 284 U.S. 390, 52 S.Ct. 189,76 L.Ed. 356 (1932). In Dunn, the United States Supreme Court addressed whether consistency in a verdict is necessary. The defendant in Dunn was charged in a three-count indictment with (1) maintaining a common nuisance by keeping for sale at a specified place intoxicating liquor, (2) unlawful possession of intoxicating liquor, and (3) unlawful sale of such liquor. The jury convicted the defendant of maintaining a nuisance by keeping alcohol for sale at a specified place, but acquitted him of the predicate offenses of unlawful possession and unlawful sale of liquor. The Supreme Court held:
 "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. . . . If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as res judicata of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold. As was said in Steckler v. United States, 7 F.2d 59, 60
[(2d Cir. 1925)]:
 "`The most that can be said about such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as not more than their assumption of power which they had no right to exercise, but to which they were disposed through lenity.'
 ". . . .
 "That the verdict may have been the result of compromise, or of a mistake on the part of jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."
284 U.S. at 393-94, 52 S.Ct. 189.
In United States v. Powell, 469 U.S. 57,105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the United States Supreme Court reaffirmed the principle that inconsistent verdicts are acceptable. The defendant in Powell was charged with multiple counts of violating the federal narcotics law, along with conspiracy, illegal possession of firearms, and making false statements. A jury acquitted the defendant of conspiring with her husband, son, and others to intentionally possessing cocaine with an intent to distribute. The jury also acquitted her on a count of possessing a specific quantity of cocaine with an intent to distribute it. However, the same jury convicted the defendant on three counts of the compound offense of using the telephone in "`committing and in causing and facilitating' certain felonies — `conspiracy to possess with intent to distribute and possession with intent to distribute cocaine.'" 469 U.S. at 60, 105 S.Ct. 471.
The defendant in Powell argued that Dunn,supra, was an incorrect statement of the law and that the principles of res judicata or collateral estoppel should apply to verdicts rendered by a single jury to preclude acceptance of a guilty verdict on a telephone-facilitation count where the jury acquits the defendant on the predicate felony. The Supreme Court stated:
 "We believe the Dunn rule rests on a sound rationale that is independent of its theories of res judicata, and that it therefore survives an attack based upon its presently erroneous reliance on such theories. As the Dunn Court noted, where truly inconsistent verdicts have been reached, `[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, *Page 999 
but that does not show that they were not convinced of the defendant's guilt.' Dunn, supra, at 393. The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, as the above quote suggests, inconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such acquittal by the Constitution's Double Jeopardy Clause. See Green v. United States, 355 U.S. 184, 188 (1957); Kepner v. United States, 195 U.S. 100, 130, 133 (1904).
 "Inconsistent verdicts therefore present a situation where `error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. Harris v. Rivera, [454 U.S. 339 (1981)], indicates that nothing in the Constitution would require such a protection, and we therefore address the problem only under our supervisory powers over the federal criminal process. For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest. This possibility is a premise of Dunn's
alternative rationale — that such inconsistencies often are a product of jury lenity. Thus, Dunn has been explained by both courts and commentators as a recognition of the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch. See, e.g., United States v. Maybury, 274 F.2d 899, 902 (C.A.2 1960)(Friendly, J.); Bickel, Judge and Jury — Inconsistent Verdicts in the Federal Courts, 63 Harv. L.Rev. 649, 652 (1950). Cf. Duncan v. Louisiana, 391 U.S. 145, 155-156 (1968).
 "The burden of the exercise of lenity falls only on the Government, and it has been suggested that such an alternative should be available for the difficult cases where the jury wishes to avoid an all-or-nothing verdict. See Bickel, supra, at 652. Such an act is, as the Dunn Court recognized, an `assumption of a power which [the jury has] no right to exercise,' but the illegality alone does not mean that such a collective judgment should be subject to review. The fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable."
469 U.S. at 64-66, 105 S.Ct. 471 (footnote omitted).
The Powell Court refused to allow a defendant to challenge inconsistent verdicts on the ground that the verdict in the case was not the product of lenity, but instead was an error that worked against them. The Supreme Court abandoned that portion of its reasoning in Dunn based on a res judicata analysis. 469 U.S. at 64, 66, 105 S.Ct. 471. The Powell Court noted that a defendant is afforded protection against jury irrationality or error by the review of the sufficiency of the evidence: *Page 1000 
 "Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. . . . This review should be independent of the jury's determination that evidence on another count was insufficient. The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilty beyond a reasonable doubt. We do not believe that further safeguards against jury irrationality are necessary."
469 U.S. at 67, 105 S.Ct. 471.
The Powell Court noted that nothing in the opinion was intended to resolve the question that occurs when a defendant is convicted of two crimes, and a guilty verdict on one logically excludes a finding of guilt on the other crime.469 U.S. at 69 n. 8, 105 S.Ct. 471. The Supreme Court citedUnited States v. Daigle, 149 F.Supp. 409 (D.D.C.), aff'd,248 F.2d 608 (1957), as such an example. In Daigle, the trial court instructed the jury that it could not return verdicts of guilty as to both larceny and embezzlement.149 F.Supp. at 414. Despite the trial court's instructions, the jury found the defendant guilty of both, and the court held that the verdicts were absolutely inconsistent stating: "[W]here a guilty verdict on one count negatives some fact essential to a finding of guilty on a second count, two guilty verdicts may not stand." 149 F.Supp. at 414. The trial court entered a judgment of acquittal on the greater offense of larceny, allowed the lesser offense of embezzlement to stand, and denied the defendant's motion for a new trial.
Confusion exists throughout Alabama courts over the difference between inconsistent verdicts and mutually exclusive verdicts. "The general rule is that there need be no rational compatibility between the verdicts on the several counts of an indictment. The exception to this rule is where the jury returns multiple convictions as to crimes which are mutually exclusive of each other. Conway v. State,489 So.2d 641, 642 (Ala.Cr.App. 1986). . . ." Grikis v. State,552 So.2d 187, 187 (Ala.Crim.App. 1989). This seemingly straightforward rule has been somewhat difficult to apply because of confusion over the meaning of the terms "inconsistent verdicts" and "mutually exclusive verdicts."
This confusion was heightened by our decision inDorsey. In Dorsey, the majority opinion never expressly stated that the two verdicts that concerned 13-year-old Crane — felony murder and capital murder — were mutually exclusive. See Dorsey,881 So.2d 533. However, Justice Stuart's dissent in Dorsey
seemed to interpret the majority's decision as holding that the two were mutually exclusive. 881 So.2d at 540-41. Therefore, we will attempt to clarify the difference between inconsistent verdicts and mutually exclusive verdicts and state the appropriate analysis for each.
Alabama appellate court cases have consistently held that inconsistent verdicts are permissible. See Hammond v.State, 497 So.2d 558 (Ala.Crim.App. 1986); McClellan v.State, 484 So.2d 1150 (Ala.Crim.App. 1985); Bradham v.State, 27 Ala.App. 225, 170 So. 222 (1936). As early as 1936, the Court of Appeals in Bradham held that inconsistency in verdicts was a jury matter. InBradham, the jury convicted the defendant of carnal knowledge of a girl under 12, but acquitted him of the offense of rape. The Court of Appeals stated:
 "[I]f the jury disbelieved the testimony which supported the first count of the indictment, there was no basis for their verdict finding appellant guilty under the second. But, for all we can say, they *Page 1001 
may have believed in the requisite way this testimony, and, in their province, simply have chosen to ground their verdict on the charge contained in the second count; the same testimony sufficing. It was strictly a jury matter."
27 Ala.App. at 226, 170 So. at 222.
The Court of Criminal Appeals has also based subsequent decisions on the United States Supreme Court's decision inDunn, supra. McClellan, 484 So.2d at 1152-53. InMcClellan, the Court of Criminal Appeals held that the verdicts of guilty for possession of burglar's tools and of not guilty of burglary in the third degree were inconsistent because, it reasoned, the jury's acquittal of burglary negated the "intent" element that was also required for the possession charge. 684 So.2d at 1153. However, based on Dunn, the court held that the inconsistency could have been based on jury compromise or a decision that the defendant did not actually commit the burglary. 484 So.2d at 1152. "At any rate, we are unable to conclude that the two verdicts are so irreconcilably inconsistent with, or repugnant to, each other as to justify a reversal of the judgment of conviction of the crime charged by the first count of the indictment." 484 So.2d at 1153.
The Court of Criminal Appeals has also upheld jury verdicts in other cases where the verdicts were inconsistent. SeeHammond, supra (upholding a jury verdict convicting the defendant of robbery, but acquitting him of felony murder when such a verdict was inconsistent based on the facts);Hill v. State, 651 So.2d 1128 (Ala.Crim.App. 1994) (upholding a jury verdict acquitting the defendant of theft and convicting him of a violation of the ethics act, where the two charges were related to the same act).
In Conway v. State, 489 So.2d 641, 642
(Ala.Crim.App. 1986), the Court of Criminal Appeals stated:
 "There is an exception to this rule [that consistency in verdicts is not necessary]. `The general rule dispensing with the necessity for consistency as between the acquittals and guilty verdicts under a multicount indictment or information is not ordinarily applied where the jury returns multiple convictions as to crimes which are mutually exclusive of each other.' 18 A.L.R.3d at 283."
The jury in Conway had returned verdicts of not guilty of first-degree kidnapping, but guilty of second-degree kidnapping, and guilty of felony murder based on the underlying felony of first-degree kidnapping. 489 So.2d at 641-42. The Court of Criminal Appeals explained mutually exclusive verdicts, stating:
 "Here, the jury's verdicts of not guilty of kidnapping in the first degree and guilty of felony-murder were mutually exclusive because, by statutory definition, felony murder involves causing a death during the commission or attempt to commit certain specific felonies including kidnapping in the first degree. Alabama Code 1975, § 13A-6-2(a)(3). Because of the very definition of the offenses, the defendant could not be guilty of felony-murder if he only committed kidnapping in the second degree. Conversely, if the defendant was guilty of felony-murder, he could not have been guilty of kidnapping in the second degree, but must have been guilty of kidnapping in the first degree."
489 So.2d at 642.
Since Conway, there has been confusion over what verdicts are mutually exclusive and what are merely inconsistent. Decisions from other jurisdictions, which this Court finds persuasive, may be helpful in distinguishing between the two types of verdicts. We note that federal courts and a majority of state courts follow United States v.Powell in the area of inconsistent *Page 1002 
verdicts. Eric J. Muller, The Hobgoblin of LittleMinds? Our Foolish Law of Inconsistent Verdicts, 111 Harv. L.Rev. 771, 787 (1998) (citing cases from jurisdictions addressing inconsistent verdicts of guilty and not guilty against a single defendant); see also 5 Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, Criminal Procedure
§ 24.10(b) (2d ed. 1999) (noting that most state courts have followed Dunn and Powell); Annotation,Inconsistency of Criminal Verdict as Between DifferentCounts of Indictment or Information, 18 A.L.R.3d. 259 §§ 2-3 (1968) (citing cases addressing the view that contrary verdicts convicting on some counts and acquitting on others need not be consistent). "The states have been free to develop their own responses to the problem of inconsistent criminal jury verdicts because the Supreme Court found no constitutional dimension to the problem. See Powell, 469 U.S. at 65." Muller, 111 Harv. L.Rev. at 774 n. 7.
There have been numerous Georgia cases concerning inconsistent verdicts and mutually exclusive verdicts. In Milam v.State, 255 Ga. 560, 341 S.E.2d 216 (1986), the Supreme Court of Georgia adopted the reasoning of the United States Supreme Court in Powell, supra, and abolished the rule in Georgia against inconsistent verdicts in criminal cases. InMilam, the defendant was charged with two murders, which were committed at the same time. The jury returned a verdict of not guilty by reason of insanity as to one murder and guilty but mentally ill as to the other murder. The Georgia Supreme Court affirmed the conviction and the acquittal, ruling that there was no error inherent in the inconsistency. The holding in Milam stands for the proposition that a defendant cannot challenge as inconsistent a guilty verdict on one count and a notguilty verdict on another count because it is not generally within the trial court's power to make inquiries into the jury's deliberations or to speculate as to the reasons for an inconsistency in the jury's verdict.
However, in Thomas v. State, 199 Ga. App. 586,405 S.E.2d 512 (1991), rev'd on other grounds, 261 Ga. 854,413 S.E.2d 196 (1992), the Court of Appeals of Georgia noted that the "`general rule dispensing with the necessity for consistency as between the acquittals and guilty verdicts under a multicount indictment or information is not ordinarily applied where the jury returns multiple convictions as to crimes which are mutually exclusive of each other'" (quoting W.E. Shipley, Annotation, Inconsistency of CriminalVerdicts as Between Different Counts of Indictment orInformation, 18 A.L.R.3d 259, 283 (1968)). InThomas, the defendant was found guilty of both armed robbery of a car and theft by receiving stolen property relating to the same car. The Georgia Court of Appeals noted that "[a]n essential element of the crime of theft by receiving is `that the goods had been stolen by some person other than the accused.'" 199 Ga. App. at 586, 405 S.E.2d at 514 (quotingAustin v. State, 89 Ga.App. 866, 868, 81 S.E.2d 508,510 (1954)). The two verdicts required the defendant to have stolen the car and not to have stolen the car; therefore, the verdicts were mutually exclusive. Thomas.
Dumas v. State, 266 Ga. 797, 471 S.E.2d 508 (1996), presents another example of mutually exclusive verdicts. InDumas, the defendant was charged with malice murder, felony murder, vehicular homicide, and driving under the influence. At trial, the jury found the defendant guilty of malice murder, vehicular homicide, and driving under the influence. In Georgia, malice murder is defined as "the killing of another `with malice aforethought, either expressed or implied.'" 266 Ga. at 799, 471 S.E.2d at 511 (quoting Ga. Code Ann. § 16-5-1(a) (1968)) (emphasis added; footnote *Page 1003 
omitted). Vehicular homicide is defined as "killing another while operating a car, `without maliceaforethought' and `without an intention to do so.'"Id. (quoting Ga. Code Ann. § 40-6-393(a) and (b) (1968)) (emphasis added; footnote omitted). Because the crime of malice murder required malice aforethought and vehicular homicide was defined as a killing without malice, the Georgia Supreme Court held that these two verdicts were mutually exclusive, "killing both with and without an intention to do so." 266 Ga. at 799, 471 S.E.2d at 511.
In Kimble v. State, 236 Ga.App. 391, 512 S.E.2d 306
(1999), the Court of Appeals of Georgia stated that in light of the abolition of the inconsistent-verdict rule (which applies to inconsistencies between verdicts of acquittal and verdicts of conviction), it was not necessary to vacate a conviction because of an acquittal on the predicate offense. "[T]he issue is not whether an acquittal on one charge would logically necessitate acquittal on another charge on which the jury convicted the defendant; rather the sole question is whether the evidence viewed in favor of the conviction was sufficient to support the guilty verdict." 236 Ga.App. at 395,512 S.E.2d at 309.
In Jackson v. State, 276 Ga. 408, 577 S.E.2d 570
(2003), the Supreme Court of Georgia offered an explanation of mutually exclusive verdicts. In that case, the defendant was convicted of felony murder based on aggravated assault and of involuntary manslaughter based on reckless conduct arising out of the death of the same victim. The Georgia Supreme Court held that the two verdicts — finding the defendant guilty of felony murder and of involuntary manslaughter — were not mutually exclusive as a matter of law because felony murder, like involuntary manslaughter, does not require proof of a criminal intent to murder to support a conviction.276 Ga. at 410, 577 S.E.2d at 573-74. The court explained that this, however, does not end the inquiry because both felony murder and involuntary manslaughter are predicated upon the commission or omission of another offense or act:
 "[A] mutually exclusive verdict may be rendered in a particular case where the offenses or acts alleged in the indictment as underlying the felony murder and involuntary manslaughter counts reflect that the jury, in order to find the defendant guilty on both counts, necessarily reached `two positive findings of fact that cannot logically mutually exist.' Strong v. State, 223 Ga.App. 434, 436, 477 S.E.2d 866
(1996)(Beasley, C.J., dissenting), rev'd in Kimble v. State, 236 Ga.App. 391(1), 512 S.E.2d 306
(1999). To determine whether this occurred, the alleged underlying offenses or acts must be carefully scrutinized."
276 Ga. at 410-11, 577 S.E.2d at 574.
The Georgia Supreme Court ultimately found these two verdicts mutually exclusive, stating, "[v]erdicts are mutually exclusive "where a guilty verdict on one count logically excludes a finding of guilt on the other. [Cits.]' United States v.Powell, 469 U.S. 57, 69 fn. 8." Jackson,276 Ga. at 410, 577 S.E.2d at 573. In a footnote, the court further clarified the difference between mutually exclusive verdicts and inconsistent verdicts, stating:
 "[M]utually exclusive verdicts, which cannot both stand, result in two positive findings of fact which cannot logically mutually exist. Inconsistent verdicts, which do not introduce invalidity, bespeak a positive finding of fact as to one charge and the failure to make a positive finding of fact as to the other. The latter, which results in an acquittal, does not constitute a negative finding of fact but may be explained as compromise, *Page 1004 
mistake, or lenity. We can neither speculate nor inquire."
276 Ga. at 410, 577 S.E.2d at 574 n. 3 (emphasis added).
Because aggravated assault, on which the felony-murder verdict in Jackson was based, required intentional
infliction of injury, the requisite criminal negligence for involuntary manslaughter based on reckless conduct is precluded. Thus, "[a] finding of guilt on the essential element of criminal intent for aggravated assault based on [the statute] thus excludes a finding of guilt based on the essential element of criminal negligence for reckless conduct."276 Ga. at 412, 577 S.E.2d at 575 (footnote omitted). Therefore, the two verdicts were mutually exclusive.
The Georgia Supreme Court has addressed cases where the jury returns mutually exclusive verdicts in two different settings: before the jury has been dismissed and after the jury has been dismissed. Where the jury returns mutually exclusive verdicts at trial, the trial court should refuse to accept the mutually exclusive verdicts and instruct the jury to continue deliberating. In Dumas, supra, the court held, "the trial court was absolutely correct when it refused to accept the verdicts and sent the jury back to continue its deliberations." 266 Ga. at 799, 471 S.E.2d at 511.
If the judge did not send the jury back to resolve its mutually exclusive verdicts before the jurors were dismissed, the Georgia Supreme Court, citing Thomas andDumas, held:
 "`[W]here there are mutually exclusive convictions, it is insufficient for an appellate court merely to set aside the lesser verdict, because to do so is to speculate about what the jury might have done if properly instructed, and to usurp the functions of both the jury and the trial court.' (Footnote omitted) [Dumas, 266 Ga. at 799, 471 S.E.2d at 511]. Thus, where, as here, it was both legally and logically impossible to convict Jackson of both feloriy murder and involuntary manslaughter, we must reverse both mutually exclusive convictions and order a new trial."
Jackson, 276 Ga. at 413, 577 S.E.2d at 575 (citations omitted).
The rationale in Powell is based upon a guilty verdict and a not-guilty verdict. In a majority of courts, including Alabama's, a guilty verdict and a notguilty verdict against a single defendant in the same trial does not entitle the defendant to relief. The resulting inconsistent verdict may arise from mistake or confusion, compromise, or lenity on the part of the jury. The defendant is afforded protection against jury irrationality or error by its review of the sufficiency of the evidence presented at trial and whether that evidence could support a rational determination of guilty beyond a reasonable doubt. As the Powell Court stated, this review is independent of the jury's determination that evidence on another count was insufficient to support a guilty verdict on that count.
We noted earlier that the Powell Court indicated that nothing in that opinion was intended to resolve the question in a case in which a defendant is found guilty of two crimes and a guilty verdict as to one crime logically excludes a finding of guilt as to the other crime. We agree with the Georgia courts; mutually exclusive verdicts are the result of two positive findings of fact that cannot logically coexist. In other words, it is legally impossible for the State to prove the elements of both crimes. In order to determine whether the guilty verdicts are mutually exclusive as a matter of law, the alleged underlying offenses or acts must be carefully scrutinized. The two guilty verdicts are not mutually exclusive *Page 1005 
if no element of one crime necessarily negates an element of the other.
Mutually exclusive verdicts exist when a guilty verdict on one count logically excludes a guilty verdict on another count. In contrast, inconsistent verdicts can exist where there is a verdict of guilty and another of not guilty, as when there are two guilty verdicts that are not mutually exclusive. Inconsistent criminal verdicts are permissible; mutually exclusive verdicts are not.
There has been much confusion as to whether the verdicts returned against Heard were mutually exclusive or merely inconsistent. Heard was convicted of both capital murder and felony murder. According to Alabama law, a defendant must have the intent to kill in order to be found guilty of a capital offense. § 13A-5-40(b), Ala. Code 1975; Ex parteWoodall, 730 So.2d 652, 657 (Ala. 1998)("No defendant can be found guilty of a capital offense unless he had an intent to kill, and that intent to kill cannot be supplied by the felony-murder doctrine."). Felony murder, on the other hand, does not require the specific intent to kill; it requires only the intent to commit the underlying felony. § 13A-6-2(a)(3), Ala. Code 1975; Mitchell v. State,706 So.2d 787 (Ala.Crim.App. 1997). The absence of an intent tokill, however, is not necessarily an element of felony murder, as contrasted with the intent to kill, which is an element of capital murder.
In other words, a felony-murder conviction does not require proof that the defendant unintentionally killed the victim, only that the defendant intended to commit the underlying felony. Therefore, it is possible that a defendant intended to kill the victim (the element necessary for the capital conviction) while at the same time intending to commit an underlying felony (the element necessary for the felony-murder conviction). Therefore, the most that can be said of the verdicts finding Heard guilty both of capital murder and of felony murder is that they may be merely inconsistent. These two verdicts are not mutually exclusive; they do not contain mutually exclusive essential elements.
Because these verdicts are not mutually exclusive, the verdicts should stand; "[t]hat the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation of inquiry into such matters." Dunn, 284 U.S. at 394,52 S.Ct. 189.[4]
We recognize that the Court of Criminal Appeals has held that a verdict of felony murder and a verdict of capital murder of the same victim are legally inconsistent because one murder cannot be both unintended and intended, Dorsey v. State,881 So.2d 460 (Ala.Crim.App. 2002), and this Court approved that rationale in Ex parte Dorsey. However, to the extentDorsey conflicts with the rationale in the present case that verdicts finding the defendant guilty of felony murder and capital murder are not mutually exclusive, it is hereby overruled. Although neither party has asked this Court to overrule that holding in Dorsey and it is this Court's practice not to address issues not presented to us, the Court has a duty to resolve the conflict in the law to ensure that similarly situated defendants are treated in a like manner.
B. Double-jeopardy issues
1. Waiver
The first issue raised concerning double jeopardy is the timeliness of *Page 1006 
Heard's claim that the convictions violated his protection against being twice put in jeopardy. The State argues that in accordance with Ex parte Ziglar, 669 So.2d 133, 135
(Ala. 1995), double-jeopardy claims are waived unless they are timely raised in the trial court (State's brief at 8). However, this Court recently decided a similar issue in Ex parteBenefield, 932 So.2d 92 (Ala. 2005). InBenefield, the defendant argued
 "that his convictions for first-degree rape and first-degree sexual abuse arose `from a single transaction involving the same victim,' and that, therefore, the convictions violated his double jeopardy rights. Thus, he argued, `the trial court lacked jurisdiction to adjudicate and sentence [him] as guilty of both charges.'"
932 So.2d at 92. This Court held that the decision of the Court of Criminal Appeals in its unpublished memorandum inBenefield v. State (No. CR-04-1017, May 20, 2005),926 So.2d 1090 (Ala.Crim.App. 2005)(table), conflicted with precedent established by Rolling v. State,673 So.2d 812 (Ala.Crim.App. 1995), and Ex Parte Robey,920 So.2d 1069, 1071-72 (Ala. 2004), holding that violations of double-jeopardy rights raise questions of the trial court's jurisdiction to enter a verdict. We held therefore that because Benefield's double-jeopardy claims raised a jurisdictional issue, they could not be waived and thus can be raised at any time.
The special concurrence in Benefield further clarified the standard to be applied when determining whether a defendant has waived double-jeopardy claims. In her special concurrence, Justice Stuart stated:
 "Additionally, I note that today's holding should not be interpreted as establishing that all double jeopardy claims are jurisdictional. For example, if a double jeopardy claim is viable before trial, then the defendant must object by pretrial motion, or the double jeopardy claim is foreclosed. Rolling v. State, 673 So.2d 812, 815 (Ala.Crim.App. 1995). Judge Shaw recognized the consistent application of this distinction between jurisdictional and nonjurisdictional double-jeopardy claims in Straughn v. State, 876 So.2d 492, 508-09
(Ala.Crim.App. 2003), stating:
 "`Since the decision in Rotting [v. State, 673 So.2d 812 (Ala.Crim.App. 1995)], this Court has continued to hold that certain double jeopardy claims implicate the jurisdiction of the trial court and, therefore, are not subject to waiver. [Citations omitted.] Like Rolling, most of those decisions involved simultaneous convictions for both a greater and a lesser-included offense.
 "`However, caselaw from both this Court and the Alabama Supreme Court recognize[s] that generally other double-jeopardy claims are singularly constitutional in nature and are, therefore, subject to waiver.'"
932 So.2d at 94-95.
Therefore, because, like Rolling, this case concerns simultaneous convictions involving greater and lesser-included offenses, like Rolling, Heard's double-jeopardy claim implicates the jurisdiction of the trial court and cannot be waived. The defendant can raise this claim at any time.
2. Merits of the double-jeopardy claim
The next issue is whether Heard's protection from twice being put in jeopardy for the same crime has been violated. "[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *Page 1007 United States v. Halper, 490 U.S. 435, 440,109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), overruled on other grounds,Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488,139 L.Ed.2d 450 (1997). Here, we are concerned with the third abuse protected by the Double Jeopardy Clause — prohibiting the State from "`"punishing twice or attempting a second time to punish criminally for the same offense."'"United States v. Ursery, 518 U.S. 267, 273,116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (quoting Witte v. UnitedStates, 515 U.S. 389, 396, 115 S.Ct. 2199, 132 L.Ed.2d 351
(1995) (quoting in turn Helvering v. Mitchell,303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938) (emphasis omitted))).
The test for determining whether two offenses are the same for double-jeopardy purposes was established in Blockburger v.United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306
(1932). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."Blockburger, 284 U.S. at 304, 52 S.Ct. 180.
This Court applied Blockburger in Ex parteHaney, 603 So.2d 412 (Ala. 1992), in holding that the two convictions against Haney did not violate her protection against double jeopardy. Haney was convicted of two counts of capital murder: murder for hire, § 13A-5-40(a)(7), Ala. Code 1975, and murder committed during the course of a robbery, § 13A5-40(a)(2), Ala. Code 1975. Both counts were based on the killing of one victim — her husband. This Court held that, "because each crime contains an element not contained in the other, there was no violation of the prohibition against double jeopardy." Haney, 603 So.2d at 419
(citing Blockburger).
Likewise, in Ex parte Peraita, 897 So.2d 1227
(Ala. 2004), this Court decided an issue concerning two capital-murder convictions. In that case, the defendant argued that his two capital-murder convictions for the death of one victim violated the Blockburger test. In Count I the defendant was charged with murder made capital because the murder was committed while he was under a sentence of life imprisonment, § 13A-5-40(a)(6), and in Count II he was charged with murder made capital because the murder was committed by a defendant who had been convicted of another murder in the 20 years preceding the crime, § 13A-5-40(a)(13). He was convicted on both counts. On appeal, this Court held that the two capital-murder convictions were for separate offenses and did not violate Blockburger.
In numerous cases, the Court of Criminal Appeals has also held that two capital-murder convictions resulting from the death of one victim do not violate the Blockburger test because of the requirement of different elements in the two crimes.See Powell v. State, 631 So.2d 289 (Ala.Crim.App. 1993) (two convictions for capital murder of one victim because murder occurred during the course of a robbery and during the course of a burglary did not violate double-jeopardy principles because each offense contained an element not present in the other); Flowers v. State, 922 So.2d 938
(Ala.Crim.App. 2005) (two convictions for capital murder of one victim because murder occurred during a robbery and during a kidnapping did not violate double-jeopardy principles);Jackson v. State, 516 So.2d 726
(Ala.Crim.App. 1985) (convictions for murder made capital because it was committed during the course of a robbery and during one or a series of acts, when the crimes were based on the death of one of the same victims, did not violate double-jeopardy principles); Stewart v. State, 601 So.2d 491
(Ala.Crim.App. 1992), overruled *Page 1008 
on other grounds, Ex parte Gentry, 689 So.2d 916
(Ala. 1996) (two convictions for capital murder, based on one murder, because murder was committed during the course of a robbery and during the course of a kidnapping passed theBlockburger test).
The Court of Criminal Appeals also applied theBlockburger test in Borden v. State,711 So.2d 498 (Ala.Crim.App. 1997), affirmed, 711 So.2d 506
(Ala. 1998). In Borden, the defendant was charged with two counts of murder: Count I, capital murder wherein two or more persons are murdered by one act or pursuant to one course of conduct, § 13A-5-40(a)(10), and Count II, capital murder committed by using a deadly weapon fired from outside a dwelling while the victim was inside the dwelling, § 13A-5-40(a)(16). The jury returned verdicts finding the defendant guilty of capital murder as charged in Count I and guilty of the lesser-included offense of intentional murder as to Count II.
In a footnote, the Court of Criminal Appeals discussed the application of Blockburger to the facts inBorden:
 "Here, Count I and Count II of the indictment were based partly on the same act: the intentional killing of Roland Harris. However, each count charged a crime containing a statutory element not contained in the other. In this case, each capital offense charged required proof of an element that the other did not. Proof of the double murder charge in Count I required proof of more than one murder and proof that the multiple murders were committed by one act or pursuant to one scheme or course of conduct, which the firing-a-deadly-weapon-into-a-dwelling murder charge in Count II did not require. Proof of the firing-a-deadly-weapon-into-a-dwelling murder charge required proof that the defendant murdered the victim by firing a deadly weapon from outside a dwelling while the victim was inside a dwelling, which the double murder charge did not require. Under the Blockburger test, the appellant could properly be indicted and convicted for two separate and distinct capital offenses `notwithstanding a substantial overlap in the proof offered to establish the crimes.' The indictment was not multiplicitous and the separate counts, as alleged in the indictment, did not facially violate the Double Jeopardy clause."
Borden, 711 So.2d at 501-02 n. 2 (citations omitted).
The Court of Criminal Appeals held, though, that `[a]lthough the indictment returned against the appellant was facially valid, we find that the trial court was without jurisdiction to adjudge the appellant guilty of both capital murder for the double murder [of the victims] . . . and guilty of the intentional murder [with regard to one of the victims]."Borden, 711 So.2d at 502. The court based its reasoning on § 13A-1-8(b), Ala. Code 1975, which provides, in pertinent part, as follows:
 "When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
 "(1) One offense is included in the other, as defined in section 13A-1-9. . . ."
Section 13A-1-9(a)(1), provides:
 "A defendant may be convicted of an offense included in an offense charged. An offense is an included one if:
 "(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged. . . ."
In other words, § 13A-1-8(b) does not bar multiple convictions when a single criminal *Page 1009 
act results in multiple offenses, except, for example, under § 13A-1-9, where one offense is a lesser-included offense of the other.
The Court of Criminal Appeals in Borden, therefore, held that because intentional murder, defined in § 13A-6-2(a)(1), is an element that must be proven of the capital offense of which the defendant was convicted, § 13A-5-40(a)(10), intentional murder is a lesser-included offense of this capital-murder charge. Therefore, the two convictions violated double jeopardy, and the Court of Criminal Appeals ordered that the conviction for the lesser-included offense be vacated. This Court affirmed the judgment of the Court of Criminal Appeals. Ex parte Borden,711 So.2d 506.
The Court of Criminal Appeals has also applied § 13A-1-8 in other cases. In Cooper v. State, 912 So.2d 1150
(Ala.Crim.App. 2005), the Court of Criminal Appeals applied the statute to two convictions for the murder of one victim; the defendant was convicted under Count I for intentional murder (based on the capital charge of murder during the course of a robbery) and under Count II for capital murder committed during the course of a burglary. The Court of Criminal Appeals held that the two convictions violated § 13A-1-8(b), because intentional murder, even though it was based under another count, was a lesser-included offense of the offense of capital murder committed during the course of a robbery. Therefore, the conviction for the lesser-included offense should be vacated because it violated the defendant's protection against double jeopardy.
Likewise, in Simmons v. State, 797 So.2d 1134
(Ala.Crim.App. 1999), two verdicts were held to violate double-jeopardy principles and § 13A-1-8(b) because one found the defendant guilty of a lesser-included offense of another. In Simmons, there was one victim and the defendant was convicted under Count III (capital murder committed during the course of sexual abuse) and under Count II (intentional murder committed during a robbery).[5] Again, because intentional murder was also a lesser-included offense under Count III, the defendant could not be convicted of both; the conviction of the lesser-included offense was ordered vacated.
A defendant can be convicted of two or more capital murders for the death of one victim, so long as those convictions are in accordance with Blockburger, i.e., so long as each conviction required an element not required in the other convictions. However, when a jury returns a verdict finding a defendant guilty of capital murder on one count and guilty of a lesser-included offense of another count, if that lesser-included offense is also a lesser-included offense of the offense resulting in the capital-murder conviction, under § 13A-1-8(b) and § 13A-1-9, Ala. Code 1975, the conviction for the lesser-included cannot stand.
In the present case, Heard was charged in Count I with murder made capital because it was committed during the course of a robbery, § 13A-5-40(a)(2), and in Count II with murder made capital because it was committed through the use of a deadly weapon fired from outside a dwelling while the victim was inside the dwelling, § 13A-5-40(a)(16). A conviction on Count I required proof that Heard intended to commit a robbery; this was not an element of the offense charged in Count II. To convict under Count II, the State had to prove that Heard fired into a dwelling; this is not ah element of the offense charged in Count I. Therefore, the indictment does not facially violate the Blockburger test. *Page 1010 
If the jury had returned verdicts of guilty on both counts of capital murder, those two convictions would have been permissible. However, the jury returned verdicts convicting Heard of the lesser-included offense of felony murder under Count I and of capital murder under Count II. Therefore, we must determine whether the felony-murder conviction is considered a lesser-included offense of the offense resulting in the capital-murder conviction on Count II.
Section 13A-1-9(a), Ala. Code 1975, states:
"An offense is an included one if:
 "(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
 "(2) It consists of an attempt or solicitation to commit the offense charged or to commit a lesser included offense; or
 "(3) It is specifically designated by statute as a lesser degree of the offense charged; or
 "(4) If differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission."
Based on this definition of a lesser-included offense, the only category under which this case could fall would be § 13A-1-9(a)(1). However, felony murder for a killing that occurs during the course of a robbery is not established by proof of the same or fewer than all the facts required to establish the commission of capital murder for firing a gun into an occupied dwelling. Felony murder requires the intent to commit the underlying felony (robbery), while the offense resulting in the capital-murder conviction requires the intent to discharge a firearm into a home. Therefore, felony murder based on the felony of robbery is not a lesser-included offense of the offense of capital murder based on firing a gun into an occupied dwelling.[6]
Because the conviction under Count I is not for a lesser-included offense to the offense charged in Count II, § 13A-1-8(b) does not apply to this case. Because the indictment passed the Blockburger test and § 13A-1-8(b) does not apply, these convictions do not violate Heard's protection from double jeopardy.
III. Conclusion
As stated earlier, mutually exclusive verdicts occur where a guilty verdict on one count logically excludes a guilty verdict on another count. In contrast, inconsistent verdicts can occur where there is a verdict of guilty and another of not guilty, as well when there are two guilty verdicts that are not mutually exclusive. Inconsistent criminal verdicts are permissible; mutually exclusive verdicts are not.
The verdicts in this case were not mutually exclusive, and they did not violate double-jeopardy principles. Accordingly, the convictions should be upheld. The judgment of the Court of Criminal Appeals is reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.* *Page 1011 
NABERS, C.J., and SEE, LYONS, HARWOOD, WOODALL, STUART, SMITH, and PARKER, JJ., concur.
[1] The Court of Criminal Appeals originally dismissed Heard's appeal on the grounds that the notice of appeal was untimely. Heard v. State, 999 So.2d 975
(Ala.Crim.App. 2002). This Court held that Heard's motion to extend the trial court's time to decide his motion for a new trial, which stated that counsel for the State had consented to the extension, constituted the appearance in the record of the consent of both parties to the extension of time, and, therefore, the appeal was timely. Ex parte Heard,999 So.2d 978 (Ala. 2003).
[2] The State did not object to the trial court's including, nor did the State argue that the trial court erred by including, felony murder as a lesser-included offense to the capital-murder offense charged in Count 3 — intentional murder of a victim less than 14 years of age. This Court assumed for the purposes of Dorsey's appeal that the trial court's instructions were correct.
[3] We note that § 13A-6-2(a)(3), Ala. Code 1975, provides that a person commits felony murder if:
 "(3) He or she commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he or she is committing or attempting to commit, or in immediate flight therefrom, he or she, or another participant if there be any, causes the death of any person."
There may be a felony "clearly dangerous to human life" that is a lesser offense included within the offense of capital murder of a victim less than 14 years of age. However, that question is not currently before this Court.
[4] The briefs in this case addressed the question of when the issue of mutually exclusive verdicts must be raised. Because the verdicts here are not mutually exclusive, however, we need not address that issue.
[5] The capital-murder charges under Count I were dismissed by the State at trial.
[6] We note that the trial court charged the jury on intentional murder as a lesser-included offense under both Count I and Count II. Had the jury found Heard guilty of intentional murder as a lesser-included offense of capital murder (instead of convicting Heard of felony murder under Count I), then intentional murder would have been a lesser-included offense of capital murder under Count II and thereby a conviction for intentional murder would have been precluded under § 13A-8-1 and § 13A-9-1.
* Note from the reporter of decisions: On March 7, 2007, on remand from the Alabama Supreme Court, the Court of Criminal Appeals remand the case, by order. On January 25, 2008, on return to remand, the Court of Criminal Appeals affirmed, by unpublished memorandum (CR-01-1810). On May 16, 2008, that court denied rehearing, without opinion. On August 8, 2008, the Supreme Court denied certiorari review, without opinion (1071203). *Page 1012